Gregory R. Preston, Esq.
Preston & Wilkins, LLC
76 South Orange Avenue, Suite 300
South Orange, New Jersey 07079
(973) 763-0399
Attorneys for Defendant
Newark Housing Authority

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-------------------------------------------------------X

CHERYL GOINS,                                    **DOCKET NO.: 2:15-CV-2195-KM-SCM**

            Plaintiff,

     vs.

NEWARK HOUSING AUTHORITY,

            Defendant.

-------------------------------------------------------X

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO FED. R. CIV. P. 56**

On the Brief
Gregory R. Preston

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF FACTS ..................................................................................... 1

    NHA's Overtime Policy ................................................................................... 1

    Plaintiff's Work Performance as the Coordinator of Contractual Operations ........................... 2

    Plaintiff Resigns After Exhausting Her Family and Medical Leave ........................................ 3

    Plaintiff's Complaint ....................................................................................... 3

ARGUMENT ........................................................................................................ 5

SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE ARE NO
MATERIAL TRIABLE ISSUES OF FACT ........................................................... 5

PLAINTIFF'S FAIR LABOR STANDARDS ACT CLAIM LACKS MERIT BY PLAINTIFF'S
OWN ADMISSION ............................................................................................. 6

PLAINTIFF CANNOT ESTABLISH A PRIM FACIE FLSA RETALIATION CLAIM ............. 7

MS. GOINS IS NOT A WHISTLEBLOWER WHO SUFFERED RETALIATION IN
VIOLATION OF THE CONSCIENTIOUS EMPLOYEE PROTECTION ACT ...................... 10

PLAINTIFF WAS NOT SUBJECT TO DISCRIMINATION BASED UPON HER GENDER
WHEN KEVIN MEDLIN WAS PROMOTED ........................................................... 16

PLAINTIFF WAS NOT SUBJECT TO DISPARATE TREATMENT DUE TO HER RACE ... 18

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....................................... 5

*Barnello v. AGC Chems. Ams., Inc.*,
  No. 08-cv-03505 (WJM/MF), 2009 U.S. Dist. LEXIS 6410, 2009 WL 234142, at *6 (D.N.J.
  Jan. 29, 2009) ....................................................................................................... 7-8

*Blackburn v. UPS, Inc.*,
  179 F.3d 81 (3d Cir. 1999) ................................................................................ 11

*Caver v. City of Trenton*,
  420 F.3d 243 (3d Cir. 2005) .............................................................................. 15

*CBOCS West, Inc. v. Humphries*,
  553 U.S. 442, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008) .................................. 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ....................................... 5

*Davis v. Abington Mem'l Hosp.*,
  765 F.3d 236 (3d Cir. 2014) ............................................................................ 6, 7

*Durham Life Ins. Co. v. Evans*,
  166 F.3d 139 (3d Cir.1999) ................................................................................ 8

*Dzwonar v. McDevitt*,
  177 N.J. 451 (2003) .......................................................................................... 14

*Edmond v. Plainfield Bd. of Educ.*,
  171 F. Supp. 3d 293 (D.N.J. 2016) ...................................................................... 9

*Estate of Oliva v. N.J., Dep't of Law & Pub. Safety*,
  604 F.3d 788 (3d Cir. 2010) .............................................................................. 19

*Fischer v. G4S Secure Sols. USA, Inc.*,
  Civil Action No. 10-6792 (JBS/AMD), 2014 U.S. Dist. LEXIS 86139 (D.N.J. June 25, 2014)  11

*Fredericks v. Twp. of Weehawken*, No. 2:11-05363 (WJM), 2012 U.S. Dist. LEXIS 163396
(D.N.J. Nov.
  15, 2012) ........................................................................................................... 15

*Genesis HealthCare Corp. v. Symczyk*,
  133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013) ........................................................... 6

*Goldsmid v. Lee Rain, Inc.*,
  No. 12-3666 (JEI/JS), 2014 U.S. Dist. LEXIS 14737 (D.N.J. Feb. 6, 2014) ........... 8

*Hankins v. Temple Univ.*,
829 F.2d 437 (3d Cir. 1987) ........................................................ 19

*Klein v. Univ. of Med. & Dentistry of N.J.*,
377 N.J. Super. 28 (App. Div. 2005) ......................................... 14, 15

*Marra v. Phila. Hous. Auth.*,
497 F.3d 286 (3d Cir. 2007) ........................................................ 7, 8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) .................. 5

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ..................................................................... 16

*McLelland v. Moore*,
343 N.J. Super. 589, 779 A.2d 463 (App.Div.2001) ..................... 14

*Mieczkowski v. York City Sch. Dist.*,
414 F. App'x 441 (3d Cir. 2011) ............................................. 15-16

*Monaco v. Am. Gen. Assur. Co.*,
359 F.3d 296 (3d Cir. 2004) ........................................................ 19

*Reynolds v. Dep't of the Army*,
439 F. App'x 150 (3d Cir. 2011) .................................................. 15

*Ridgewood Bd. of Educ. v. N.E. ex rel. ME.*,
172 F.3d 238 (3d Cir.1999) ........................................................... 5

*Shellenberger v. Summit Bancorp*,
318 F.3d 183 (3d Cir. 2003) ........................................................ 11

*Victor v. State*
of N.J., 203 N.J. 383, 4 A.3d 126 (2010) .................................... 18

*Vulcan Pioneers v. City of Newark*,
No. 02-5802 (SDW), 2008 U.S. Dist. LEXIS 71256 (D.N.J. Sept. 9, 2008) ......... 16

*Wagner v. Campbell*,
779 F.3d 761 (8th Cir. 2015) ....................................................... 16

*Waldron v. SL Indus.*,
56 F.3d 491 (3d Cir. 1995) ........................................................... 16

*Woloszyn v. Cnty. of Lawrence*,
396 F.3d 314 (3d Cir. 2005) ........................................................... 5

**Statutes**

29 U.S.C. § 1981 ................................................................................................. 18

29 U.S.C.S. § 215 .............................................................................................. 7

29 U.S.C. §§ 206, 207 ....................................................................................... 6

N.J.S.A. 34:19-3 ........................................................................................ 10, 11, 14

Federal Rule of Civil Procedure 56(a) ............................................................. 5

## STATEMENT OF FACTS

Newark Housing Authority ("NHA") is the largest public housing authority in New Jersey and the eleventh largest in the nation. NHA has a portfolio of 44 public housing communities with a total of 8,000 rental units scattered throughout the City of Newark.

NHA employed Cheryl Goins as a Coordinator of Contractual Operations from October 2012 until her resignation in September 2014. *See* Transcript of Cheryl Goins, ("Goins Tr.") page 84, line 11-24 ("p___: __") Goins Tr., p88:10-13, p191:13-25, p192:1-7, annexed to the Declaration of Gregory R. Preston, ("Preston Decl.") as Exhibit B.

Shari Hamilton was the Director of Procurement and Contracts and supervised Cheryl Goins. *See* Transcript of the Deposition of Shari Hamilton ("Hamilton Tr."), annexed to the Preston Decl., as Exhibit C, p164:15-20.

As a Coordinator of Contractual Operations, Ms. Goins had procurement responsibilities to obtain common goods and services for the various NHA departments. Ms. Goins would be responsible for managing the bid solicitation process, the contract award and the administration of parts of the contract after the contract is awarded and executed.

**NHA's Overtime Policy**

NHA had a policy that employees would only be paid overtime, where there was prior approval for the employee to work overtime. *See* Exhibit C, Hamilton Tr., p157:15-25, p173:5-25, p174:1-2; p174:3-24; p217:2-25, p218:1-25. Plaintiff was aware of and understood NHA's policy regarding overtime. *See* Exhibit B, Goins Tr., p98:1-25, p137:1-6, p293:13-25, p294:1-25.

NHA had a hand punch in and punch out system to keep track of the time that employees worked. *See* Exhibit B, Goins Tr., p148:21-25, p149:1-25, p264:19-23. Shari Hamilton had to

1

remind Ms. Goins to punch in and out at the correct times based upon Ms. Goins approved work schedule.  *See* Exhibit B, Goins Tr., p289:16-25, p290:1-25, p291:1-25, p292:1-25, p293:1-25, p321:1-25, p322:1-25, p323:1-25.

The New Jersey Department of Labor ("DOL") investigated the pay practices of NHA in 2013.  *See* Exhibit D, Bryant Tr., p61:15-25.  Pursuant to the DOL investigation, Plaintiff Goins was interviewed.  *See* Exhibit B, Goins Tr., p307:2-25.  Plaintiff provided a written statement to the DOL investigator and advised that she did not work overtime at NHA.  *See* Copy of Goins Employee Personal Interview Statement, annexed to the Preston Decl., as Exhibit M; *see also* Exhibit B, Goins Tr., 387:17-25, p388:1-25.

**Plaintiff's Work Performance as the Coordinator of Contractual Operations**.

On June 11, 2014, Plaintiff' Goins received a Verbal Notice of Disciplinary Action.  *See* Copy of Verbal Notice of Disciplinary Action, annexed to the Preston Decl., as Exhibit G; *see also* Exhibit C, Hamilton Tr., p176:10-25, p200:15-25.  Ms. Hamilton wrote in a Verbal Disciplinary Warning that Ms. Goins was:

> Inefficient/incompetent.  Ms. Goins work has been fraught with content errors, miscalculations and omissions . . . Since joining NHA midyear 2012, Cheryl presented herself as an expert in procurement with many years' experience, education and associated credentials. . . However, nearly two years later work performance is more indicative of novice. . . .

*See* Ex. G, Verbal Notice of Disciplinary Action; Ex. C, Hamilton Tr., p200:15-25, 201:1-6.

On June 12, 2014, Plaintiff received a Performance Improvement Plan ("PIP") due to her poor work performance.  *See* Exhibit B, Goins Tr., p418:20-25, p420;8-13, p429:1-22,

2

p435;18-25; *See* Exhibit C, Hamilton Tr., p179-184; *see also* PIP annexed to the Preston Decl., as Exhibit H.

On June 16, 2014, within days of receiving the PIP, Plaintiff took a leave of absence purportedly due to stress and never returned to NHA.  *See* Exhibit B, Goins Tr., p165:3-7, p182:1-4, p185:8-10, p191:13-25; p192:1-7; p193:10-22; p196:20-25; p197:1-8; Exhibit C, Hamilton Tr., p200;1-12; *see also* Employee Request for Leave of Absence, annexed to the Preston Decl., as Exhibit I.

**Plaintiff Resigns After Exhausting Her Family and Medical Leave**

Plaintiff resigned from the NHA in September 2014.  *See* Exhibit B, Goins Tr., p240-241.  Plaintiff resigned prior to NHA terminating her employment.  *See* Exhibit B, Goins Tr., p191:13-25, p192:1-7, p199:14-24, p200:2-6, p234:1-5, p241:11-25.

NHA had made the decision to terminate Plaintiff's employment on September 29, 2014, after she exhausted her leave under the Family and Medical Leave Act ("FMLA").  *See* Transcript of the Deposition of Sybil Bryant, annexed to the Preston Decl., as Exhibit D, p20:14-25; p23.

During her employment with NHA, Plaintiff was not disciplined, demoted, transferred or received any salary reduction.  *See* Exhibit B, Goins Tr., 163, p164;6-17, p181;13-25, p182;1-4, p185:3-10, p186:6-11, p484:13-25; Exhibit C, Hamilton Tr., p176;19-25, p201:7-14.

**Plaintiff's Complaint**

Subsequent to her resignation Plaintiff filed this action against NHA and alleged the following causes of action: 1) Failure to pay overtime wages in violation of the Fair Labor Standards Act; 2) Retaliation in violation of the Fair Labor Standards Act; 3) Violation of Conscientious Employee Protection Act; 4) Failure to accommodate a disability in violation

3

New Jersey Law Against Discrimination ("NJLAD"); 5) Failure to promote — gender discrimination in violation of NJLAD; 6) Race discrimination in violation of NJLAD and Civil Rights Act 1981.  *See* Copy of Complaint, annexed to the Preston Decl., as Exhibit K. Plaintiff withdrew her claim for failure to accommodate a disability.  *See* Exhibit B, Goins Tr., p125:13-15.

Defendant appeared in the action and filed an Answer to the Complaint.  See Copy of Answer, annexed to the Preston Decl., as Exhibit L.

4

## ARGUMENT

### I.   SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE ARE NO MATERIAL TRIABLE ISSUES OF FACT

The Court shall grant summary judgment under Federal Rule of Civil Procedure 56(a) "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324.   A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence,* 396 F.3d 314, 319 (3d Cir. 2005).

Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex*, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. ME.*, 172 F.3d 238, 252 (3d Cir.1999).

Here, Summary Judgement should be granted because there are no material triable issues of fact with regard to any of Plaintiff's claims.

## II.   PLAINTIFF'S FAIR LABOR STANDARDS ACT CLAIM LACKS MERIT BY PLAINTIFF'S OWN ADMISSION

"The Fair Labor Standards Act ("FLSA") establishes federal minimum-wage, maximum-hour, and overtime guarantees . . . ." *Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527, 185 L. Ed. 2d 636 (2013). Generally, an employer must pay its employees at least a specified minimum hourly wage for work performed and must pay one and one-half times the employee's regular wage for hours worked in excess of forty hours per week.  *See* 29 U.S.C. §§ 206, 207 (2012).  Employers who violate these provisions are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id.* § 216(b). Thus, to recover overtime compensation under the FLSA, "an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference."  *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014).

Ms. Goins claim for overtime wages lacks merit because Ms. Goins by her own admission did not work overtime.  The DOL conducted an investigation into the wage and overtime practices of NHA in March 2013.  Pursuant to that investigation certain employees were interviewed, including Plaintiff Goins.  Ms. Goins gave a signed written statement that she declared to be true and stated as follows:

> I don't work overtime.   I get lunch for one hour.   I
>
> sometimes get interrupted for questions during lunch.   I

> clock in and out for the start and end of the day.  I start
>
> working after I punch in.  No one ever changes my time.

*See* Ex. M, Employee Personal Interview Statement.  Additionally, Ms. Goins acknowledge that

she was aware of NHA's policy that overtime for employees had to be pre-approved.  *See Id.*

Ms. Goins stated, "If I work past my scheduled hours I am not paid for that time. . . .  If I were to

work overtime and it wasn't approved I don't get paid for it.  My pay is the same each week.  I

don't really work overtime."  *See Id.*

Plaintiff has presented no evidence in the record that she worked in excess of forty hours

in a given week, which was pre-approved that she was not paid for.  Accordingly, Plaintiff's

claim for overtime wages under the FLSA should be dismissed as there are no triable issues of

fact regarding her claim.

### III.   PLAINTIFF CANNOT ESTABLISH A *PRIM FACIE* FLSA RETALIATION CLAIM

Plaintiffs retaliation claim under FLSA also should be dismissed because Plaintiff is

unable to establish a *prima facie* case of retaliation.  Under FLSA, it is unlawful to "discharge or

in any other manner discriminate against any employee because such employee has filed any

complaint or instituted or caused to be instituted any proceeding under or related to this Act, or

has testified or is about to testify in any such proceeding..." 29 U.S.C.S. § 215 (LexisNexis

2010).

To establish a *prima facie* case of retaliatory discrimination, Ms. Goins must demonstrate

that: (1) the she engaged in a protected activity, (2) NHA undertook an adverse employment

action against her, and (3) there was a causal link between the plaintiff's protected action and the

employer's adverse action. *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007);

*see also Barnello v. AGC Chems. Ams.*, Inc., No. 08-cv-03505 (WJM/MF), 2009 U.S. Dist.

LEXIS 6410, 2009 WL 234142, at *6 (D.N.J. Jan. 29, 2009) (applying McDonnell Douglas retaliation standard to FLSA retaliation claims). After making the *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. *See Marra*, 497 F.3d at 300. If successful, the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's reason was false, and that the true source for the adverse employment action was retaliation. *See Goldsmid v. Lee Rain, Inc.,* No. 12-3666 (JEI/JS), 2014 U.S. Dist. LEXIS 14737, at *15-16 (D.N.J. Feb. 6, 2014)

Plaintiff Goins contends that due to her interview and participation in the DOL investigation, she was subject to retaliation in violation of the FLSA. *See* Ex K, Complaint ¶¶ 37-38. Plaintiff did not engage in protected activity because Plaintiff did not file a complaint with the DOL or institute any action. Plaintiff also did not testify in any proceeding. Even if Plaintiff's written statement is deemed testimony in a proceeding, Plaintiff's statement is not a complaint about a failure to receive overtime, because Plaintiff stated that she did not work overtime. *See* Ex. M, Employee Personal Interview Statement

Plaintiff's retaliation claim also lacks merit because she did not suffer any adverse employment action by NHA. An adverse employment action has been defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152-53 (3d Cir.1999). Ms. Goins gave her statement in March 2013, subsequent to her statement Ms. Goins was not terminated, reassigned, nor suffered any significant change in her employment benefits. *See* Ex. B, Goins Tr., 163, p164;6-17, p181;13-25, p182;1-4, p185:3-10, p186:6-11, p484:13-25; Ex. C, Hamilton Tr., p176;19-25, p201:7-14.

Ms. Goins was separated from her employment with NHA in September 2014, eighteen months after she gave her statement to the DOL. *See* Ex. B, Goins Tr., p240:11-25, p241:11-25. The lack of temporal proximity between Ms. Goins statement in March 2013 and her separation in September 2014 – would militate against a causal link between Ms. Goins statement and her separation eighteen months later. Accordingly, Ms. Goins cannot establish a *prima facie* case of retaliatory discrimination due to the statement she gave to the DOL.

Assuming *arguendo* that the Court held that Plaintiff had established a *prima facie* case, there is no evidence in the record that Ms. Goins' separation from employment was a pretext for retaliation. Ms. Goins, who resigned from NHA, claims that she was constructively discharged as a result of her purported complaints related to overtime. To prove a constructive discharge claim, a plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *See Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 313 (D.N.J. 2016). Plaintiff fails to articulate conditions at NHA that were so intolerable as to amount to a constructive discharge.

Ms. Goins claim regarding intolerable conditions lacks merit because at the time she resigned Ms. Goins had not been in the office at NHA for three months. On Thursday, June 12, 2014, Ms. Goins received a written Performance Improvement Plan, due to poor work performance. *See* Ex. H, PIP, Ex. B, Goins Tr., p418:20-25, p420;8-13, p429:1-22, p435;18-25; Ex. C, Hamilton Tr., p179-184. That following Monday, June 16, 2014 -- within days of receiving the PIP, Ms. Goins took a leave, pursuant to the Family and Medical Leave Act, purportedly, due to stress. *See* Ex. I, Employee Request for Leave of Absence. Goins never returned to work at NHA and resigned in September 2014. *See* Ex. B, Goins Tr., p165:3-7,

9

p182:1-4, p185:8-10, p191:13-25; p192:1-7; p193:10-22; p196:20-25; p197:1-8; Ex. C, Hamilton Tr., p200;1-12.

Coincidentally it was also in September 2014, that Ms. Goins settled her employment discrimination and retaliation case against Essex County, in which she received $61,500 settlement from Essex County. *See* Copy of Complaint against Essex County and Stipulation of Settlement, annexed to the Preston Decl., as Exhibit P, (Ms. Goins' Counsel Elizabeth Foster had first filed the case against Essex County Case in 2013.  The Essex County matter was pending during Ms. Goins employment with NHA).

 If there were, in fact, intolerable conditions in the NHA procurement and contracts department, Ms. Goins no doubt contributed to it.  Ms. Goins and a fellow employee, referred to Ms. Hamilton as Durag – (which refers to Ms. Hamilton wearing a Hijab, which Ms. Hamilton wears for religious reasons).  *See* Transcript of the Deposition of Nicole Winston and Text Messages, annexed to the Preston Decl., as Exhibits E and F.

Accordingly, Plaintiff's claim for retaliation should be dismissed as a matter of law because Ms. Goins will be unable to establish a *prima facie* case of retaliation, a constructive discharge, nor that her separation from employment was a pretext for retaliation.

## IV.    MS. GOINS IS NOT A WHISTLEBLOWER WHO SUFFERED RETALIATION IN VIOLATION OF THE CONSCIENTIOUS EMPLOYEE PROTECTION ACT

The Conscientious Employee Protection Act ("CEPA") provides that "[a]n employer shall not take any retaliatory action against an employee because the employee . . . discloses . . . an activity, policy or practice of the employer . . . that the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ." N.J. Stat. Ann. § 34:19-3(a) (West).

To pursue a CEPA claim, Ms. Goins must demonstrate: (1) she reasonably believed that her employer's conduct violated either a law, rule or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) she performed a whistle-blowing activity described in N.J.S.A. 34:19-3c (specifically, objects to or refuses to participate in any activity, policy or practice which the employee reasonably believes is a violation of a law, rule or regulation); (3) an adverse employment action was taken against her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

CEPA claims are governed by the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green used in federal discrimination cases involving 'pretext' claims. *See Blackburn v. UPS, Inc.*, 179 F.3d 81, 92 (3d Cir. 1999). Under this framework, the employee bears the initial burden of establishing a prima facie case, and then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment decision. *See Shellenberger v. Summit Bancorp*, 318 F.3d 183, 187 (3d Cir. 2003). If the defendant meets its burden, the employee "must then prove that 'retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of that process.'" *Id. Fischer v. G4S Secure Sols. USA, Inc.*, Civil Action No. 10-6792 (JBS/AMD), 2014 U.S. Dist. LEXIS 86139, at *24-25 (D.N.J. June 25, 2014).

Ms. Goins did not engage in whistleblowing activity. Shari Hamilton, Ms. Goins supervisor, testified that Ms. Goins never complained verbally or in writing that she believed that there was unethical or illegal conduct happening with regard to contracts in the procurement department. *See* Ex. C, Hamilton Tr., p206:8-16.

11

Plaintiff Goins claims that she was subject to retaliation because she disclosed that her supervisors requested that she engage in illegal activities related to procurement.   Specifically, Ms. Goins alleges in her complaint that she was asked to do the following:

a.    Process contracts that were too old and needed to be updated;

b.    Handle contracts that had been started by other personnel, were incorrectly prepared and bring them to completion;

c.    Process contracts that had not been sent out for proper bid; and

d.    Adjust purchase order timelines illegally.

*See* Ex. K, Complaint, ¶9.   As a threshold matter, Ms. Goins whistleblower claims are not objectively reasonable.   For example, Shari Hamilton, who has more than thirty years' experience in the area of public and private section procurement, testified In responding to the inquiry about whether contracts that had expired have to put out for a new bid as follows:

> There are many different -- there are different situations where work and performance can continue under a contract that has an expired date. And you would not be required to go out for a new competitive solicitation, specifically, because that particular contract has expired.
>
> ***
>
> If you take, for example, legal services contracts, we will go out to bid using request for proposals, not a bid. You execute the contracts.   When the contracts are in place, you assign particular cases to the law firms.

12

A case could very easily be placed with the law firm during the term, the effective term, of the contract. If that case is not brought to its conclusion before the contract expires, you would – we would not go out to bid. We would simply continue – the law firm would continue to perform the services, we would continue to receive the service and we would continue to pay them, even though the contract has expired. The way that the law states and the contract states is that any work that was ordered during the effective period of the contract would continue until its natural conclusion, even if the contract has expired as if the contract is still in full force and effect. So that is an example of when the contract could have expired and we continue to receive services and we continue to make payments long after the expiration date.

Sometimes those dates – I mean, the work can continue for many years. In legal cases, no, you never know how long it's going to take. If, say, a firm is supporting us on a development project, a development project could easily last for six years, eight years, 10 years. It depends on the type of funding for the project, it depends on a number of circumstances. And so there are situations where we would continue to use a contract, even though the contract is expired.

*See* Ex. C, Hamilton Tr., p81:2-7, p82:3-25, p83:1-2.

In order for a plaintiff to meet the threshold to withstand summary judgment under *N.J.S.A.* 34:19-3c, he or she must "furnish the trial court with enough by way of proof and legal basis to enable the court to determine as a matter of law" that the plaintiff has identified "the asserted violation with adequate particularity" for a jury's consideration. *McLelland v. Moore*, 343 N.J. Super. 589, 601, 779 A.2d 463, 471 (App.Div.2001).   To determine whether a plaintiff has presented a viable CEPA claim under section 3c, a trial court must first identify and enunciate the specific terms of a statute, rule, regulation, declaratory ruling, professional code of ethics, or clear expression of public policy that the employee reasonably believes would be violated if the facts as alleged are true and determine that there is a substantial nexus between the complained-of conduct and the law or public policy identified by the court or the plaintiff.  *Dzwonar v. McDevitt*, 177 N.J. 451, 464 (2003). Judgment for a defendant is appropriate when no such law or policy is forthcoming. *Id.*  "CEPA requires judicial resolution of threshold legal issues respecting existence of a statutory, regulatory or other clear mandate of public policy before the trier of fact determines whether an employee has been retaliated against for acting upon an objectively reasonable belief of the existence of such clear mandate by objecting to or refusing to perform acts in violation of the mandate."   See *Klein v. Univ. of Med. & Dentistry of N.J.*, 377 N.J. Super. 28, 40 (App. Div. 2005).

Here Ms. Goins did not identify and enunciate the specific terms of a statute, rule, regulation, declaratory ruling, professional code of ethics, or clear expression of public policy that would be violated if the facts as alleged are true.  In response to what provision of local contract law, Ms.  Goins believe was being violated she stated:

> I could not tell you that offhand.  I do not know page or
> sections off the top of my head.  I would have to look at my school

14

notes and reflect to that.  But as I said to you in my previous

testimony last time we met was a good example was with the

business administration certificate that required - - -.

*See* Ex. B, Goins Tr., 338:6-12.

Plaintiff's CEPA claim also lacks merit because she did not suffer any retaliatory

employment action.  A retaliatory action is defined as "the discharge, suspension or demotion of

an employee, or other adverse employment action . . . ." *See id.*  "Adverse employment action"

generally means "completed . . . personnel actions that have an effect on either compensation or

job rank" or that amount to "effective discharge." *Caver v. City of Trenton*, 420 F.3d 243, 255

(3d Cir. 2005). "When a plaintiff does not allege a discharge, suspension or demotion, 'conduct

must be serious and tangible enough to materially alter the employee's terms and conditions of

employment or adversely affect her status as an employee.'"  *See Fredericks v. Twp. of

Weehawken*, No. 2:11-05363 (WJM), 2012 U.S. Dist. LEXIS 163396, at *8 (D.N.J. Nov. 15,

2012).  Here Plaintiff does not allege that she was discharged, suspended, demoted, nor does

Plaintiff allege conduct that was so serious or tangible that it materially altered the terms and

conditions of her employment or adversely affected her status as an employee.

Although Plaintiff received a performance improvement plan, due to her poor

performance, a PIP by itself is not an adverse employment action.  *See Reynolds v. Dep't of the

Army*, 439 F. App'x 150, 153 (3d Cir. 2011) (holding that performance improvement plan "is not

an adverse employment action absent accompanying changes to pay, benefits, or employment

status").

The weight of authority makes clear that the issuance of a written reprimand alone is

insufficient to be materially adverse. *See Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441,

447 (3d Cir. 2011) (finding "reprimands that do not 'effect a material change in the terms or conditions of . . . employment' cannot be considered adverse employment actions" and that even a permanent reprimand was insufficiently adverse); *Wagner v. Campbell*, 779 F.3d 761, 767 (8th Cir. 2015) (a written reprimand even containing false statements is not itself materially adverse); Plaintiff's CEPA claimed should be dismissed because even if the Court finds that she can pass the threshold inquiry on summary judgement, there is still no proof in the record that Ms. Goins suffered an adverse employment action.

## V.   PLAINTIFF WAS NOT SUBJECT TO DISCRIMINATION BASED UPON HER GENDER WHEN KEVIN MEDLIN WAS PROMOTED

To determine a gender discrimination, claim under the NJLAD, courts use the burden-shifting analysis, which was articulated in *McDonnell Douglas Corp., v. Green* and its progeny. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Vulcan Pioneers v. City of Newark*, No. 02-5802 (SDW), 2008 U.S. Dist. LEXIS 71256 (D.N.J. Sept. 9, 2008).   The plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*   Should the defendant carry its burden, the plaintiff then must prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*

To establish a *prima facie* case of gender discrimination, Ms. Goins must show the following: (1) "that he or she is a member of a protected class"; (2) that he "was qualified for an employment position"; (3) that she "was *either not hired or fired from that position"*; (4) "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." *Waldron v. SL Indus.*, 56 F.3d 491, 494 (3d Cir. 1995).

16

Here Plaintiff claims that she was subject to gender discrimination when Kevin Medlin was promoted to the position of Senior Procurement Analyst – Procurement and Contracts. *See* Ex. K, Complaint ¶¶ 16-17; Plaintiff's Answer No. 10, to Defendant's First Set of Interrogatories ("Answers to Interrogatories"), annexed to the Preston Decl., as Exhibit O. Plaintiff Goins will be unable to establish a *prima facie* case of gender discrimination because there is no record of Ms. Goins having applied for the position of Senior Procurement Analyst, although the position was posted. Additionally, she was not similarly situated, nor favorably compares to Kevin Medlin. In response to questioning at her deposition regarding Kevin Medlin's qualifications, Ms. Hamilton, the decision maker, testified:

> Well, Kevin had an Associate's degree in accounting, business and accounting. He also worked for the Newark Housing Authority for over 20 years in performing contracts work as a member of the contracts team. He had done – been doing the work for at least 20 years.

*See* Ex. C, Hamilton Tr., p168:20-25.

Ms. Goins admits that she has no firsthand knowledge regarding Mr. Medlin's qualifications, nor does she have any documents to support her claim. *See* Ex. O, Plaintiff's Answers to Interrogatories; *see also* Plaintiff's Response No. 29, to Defendant's First Request for Production ("Response to Document Request"), annexed to the Preston Decl., as Exhibit N.

Ms. Goins, on the other hand, was not similarly qualified for the position as Mr. Medlin. In response to request to compare the qualifications of Ms. Goins and Mr. Medlin, Ms. Hamilton testified as follows:

17

> From what I recall, Cheryl did not have an Associate's
> degree, so that was different. And Cheryl had not worked in public
> housing, so that was different. And I believe that Cheryl had fewer
> years of public sector procurement experience.

See Ex. C, Hamilton Tr., p169:4-13.

Regarding Ms. Goins performance in her position as Coordinator of Contractual Operations, Ms. Hamilton wrote in a Verbal Disciplinary Warning issued to Ms. Goins in June 2014 that Ms. Goins was:

> Inefficient/incompetent. Ms. Goins work has been fraught
> with content errors, miscalculations and omissions . . . Since
> joining NHA midyear 2012, Cheryl presented herself as an expert
> in procurement with many years' experience, education and
> associated credentials. . . However, nearly two years later work
> performance is more indicative of novice. . . .

See Ex. G, Verbal Notice of Disciplinary Action; Ex. C, Hamilton Tr., p200:15-25, 201:1-6. Accordingly, Mr. Medlin's promotion did not occur under circumstances that give rise to an inference of discrimination against Ms. Goins, who was not as qualified as Mr. Medlin for the position and had not been performing in her position satisfactorily.

## VI.   PLAINTIFF WAS NOT SUBJECT TO DISPARATE TREATMENT DUE TO HER RACE

The NJLAD prohibits racial discrimination in the workplace and 29 U.S.C. §1981 prohibits racial discrimination in making and enforcing contracts. *Victor v. State of N.J.*, 203 N.J. 383, 4 A.3d 126 (2010)(NJLAD); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008)(§1981). Discriminatory treatment claims brought under the

18

NJLAD and §1981 are both analyzed under the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, discussed at length above. *See Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300-05 (3d Cir. 2004) (discussing the NJLAD); *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety*, 604 F.3d 788, 798 (3d Cir. 2010) (discussing §1981).

To establish a *prima facie* disparate treatment claim, the plaintiff must show that he is a member of a racial minority, qualified for the job from which he was discharged and that others not in the protected class were treated more favorably. *See Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Here, Plaintiff claims that Nikki Whitney, a Caucasian employee who was treated more favorably. *See* Ex. K, Complaint ¶ 15; Ex O, Answers to Interrogatories, No. 9. Ms. Goins will be unable to establish a *prima facie* case of disparate treatment discrimination. Ms. Goins has not presented a scintilla of evidence in support of this claim, other than her own conclusory and self-serving statements. Moreover, Ms. Goins admits that she has no documents to support this claim. *See* Ex. N, Responses to Document Request No. 29.

Ms. Goins did not supervise Ms. Whitney, admits that she had never seen her personnel file, and did not know Ms. Whitney's personnel history. *See* Ex., B, Goins Tr., p174:22-25, p174:1-6, p174:19-21, p366:12-25. Ms. Goins has presented no evidence regarding what work was done by Nikki Whitney, nor the performance of her duties.

Additionally, as discussed above Ms. Goins suffered no adverse employment actions. Ms. Goins did not suffer a termination, demotion, transfer or other loss of benefits as a result of the purported more favorable treatment to Ms. Whitney. In fact, Ms. Whitney's employment was terminated by NHA in August 2013, more than a year before Ms. Goins resigned her employment at NHA. Accordingly, Ms. Goins claim of race discrimination must also fail.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that Defendant's motion for summary judgment be granted and the Complaint be dismissed with prejudice.

Dated: June 19, 2018

Gregory R. Preston, Esq.
Preston & Wilkins, LLC
76 South Orange Avenue, Suite 300
South Orange, New Jersey 07079
(973) 763-0399
Attorneys for Defendant
Newark Housing Authority

20