CHERYL GOINS,

          Plaintiff,

v.

NEWARK HOUSING AUTHORITY,

          Defendant.

Civ. No. 15-2195 (KM) (JBC)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    This action arises from plaintiff Cheryl Goins's past employment with defendant the Newark Housing Authority ("NHA"). Ms. Goins has alleged that NHA asked her to participate in illegal conduct, engaged in discriminatory and retaliatory behavior against her, and failed to pay her overtime wages. Pending before the Court is the motion of defendant NHA for summary judgment pursuant to the Federal Rule of Civil Procedure 56. For the reasons explained in this opinion, I will GRANT in part and DENY in part NHA's motion.

    I.    **Background**[1]

        **a. Procedural History**

    This Opinion assumes familiarity with the procedural history of this action. I highlight here the history most pertinent to the resolution of the parties' cross motions.

---

[1]    I address several housekeeping matters.

    First, for ease of reference, certain key items from the record will be abbreviated as follows:

| "Cplt." | = | Complaint | [DE 1] |
| "DSOF" | = | Def's Statement of Facts | [DE 85-1] |
| "PRSOF" | = | Plaintiff's Response to DSOF | [DE 89-1] |

On March 27, 2015, Ms. Goins filed a Complaint against her former employer, NHA. As discussed in Section II.b, *infra*, three Counts of the complaint remain active. Ms. Goins seeks back pay, front pay, lost benefits, punitive damages, damages for emotional distress and post-traumatic stress disorder, and any and all other statutory damages. (Cplt. p. 7).

On July 17, 2015 Magistrate Judge Clark filed the original scheduling order. Because of several discovery disputes and scheduling issues, Magistrate Judge Clark extended discovery numerous times. (*See e.g.*, DE 19; DE 27; DE 34; DE 45; DE 51; DE 57; DE 65; DE 80).

On April 2, 2018, Magistrate Judge Clark filed a scheduling order setting deadlines for the filing of all dispositive motions. (DE 82). On May 9, 2018, plaintiff's counsel sought an amendment to the scheduling order, citing health issues in the plaintiff's immediate family. (DE 83). Magistrate Judge Clark granted Ms. Goins an extension, but provided that there would be "no further extensions." (DE 84). The scheduling order, as extended, required the parties to file dispositive motions by June 19, 2018, oppositions by July 17, 2018, and replies by July 31, 2018. (*Id.*).

On June 19, 2018, NHA filed its first motion for summary judgment. (DE 85). On July 25, 2018, Magistrate Judge Clark, in response to a request from plaintiff's counsel, extended the deadline for the filing of papers in

---

Second, all exhibits filed with numbers, *e.g.*, Ex. 7, are those of the plaintiff, Ms. Goins; all exhibits with letters, *e.g.*, Ex. B, are those of the defendant, NHA.

Third, Plaintiff's Exhibits 7 through 11 are filed jointly as one document (DE 89-6), but only Exhibit 7 is labeled. (DE 89-6 p. 1). I will assume that what the Plaintiff intended was the following:

| Exhibit 7:  | DE 89-6 pp. 1–2  | Exhibit 8:  | DE 89-6 pp. 3–4 |
| Exhibit 9:  | DE 89-6 pp. 5–6  | Exhibit 10: | DE 89-6 pp. 7–8 |
| Exhibit 11: | DE 89-6 pp. 9–11 | | |

Fourth, the pagination of Ms. Goins's brief in support of summary judgment (DE 93-1) is garbled. (Part of a prior draft may inadvertently have been left in the document. (Compare DE 93-1 pp. 5–15 with *id.* pp. 16–26.).) When citing to this brief, I will use the electronic docketing page ID numbers.

opposition to August 3, 2018 and ordered that there would be "NO FURTHER EXTENSIONS" of that particular deadline. (DE 87) (CAPITALS in original). Five months later, plaintiff's counsel had not filed any papers in opposition to summary judgment. On January 3, 2019, the Clerk of the Court filed a notice of call for dismissal pursuant to Local Civil Rule 41.1(a). Twelve days later, on January 15, 2019, plaintiff's counsel filed an opposition to the motion for summary judgment, proffering no excuse. (DE 89). In response, NHA filed a letter objecting to the untimely filing and seeking an extension to file a reply. (DE 91). This Court granted NHA the requested extension. (DE 92).

On January 22, 2019, now over six months late for her deadline, plaintiff's counsel filed her own motion for partial summary judgment. (DE 93) Understandably, NHA objected. (DE 94). On January 24, 2019, plaintiff's counsel submitted a letter providing the following (non-)explanation for the motion's tardiness:

> I represent the plaintiff on this matter. I recently filed opposition papers on a summary judgment motion and a cross motion on this matter, they were due months ago, and defendant's counsel has objected that they were presented so late. Exceptional circumstances prevented my adherence to the scheduling order. I seek the court's guidance as to whether a formal motion is required to explain these issues. Thank you for your kind attention to this matter.

(DE 95).

In response, on January 25, 2019, this Court instructed that it "does not render advice as to matters of procedure, and its prior orders have been explicit." (DE 96). This Court administratively terminated Ms. Goins's motion for partial summary judgment without prejudice, citing the fact that plaintiff's counsel did not provide any description of the "exceptional circumstances" that prevented her from filing anywhere near Magistrate Judge Hammer's deadline. I instructed plaintiff's counsel that she might submit an application for renewal of her motion for summary judgment should it be warranted after the disposition of NHA's summary judgment motion. (Id.).

As discussed *infra*, within her brief in opposition to summary judgment, Ms. Goins has asked this Court to consider the FLSA-related arguments contained in the brief she filed in support of her now-terminated motion for summary judgment. (DE 89 p. 24). I will review those arguments, but only insofar as they bear on her opposition to NHA's motion for summary judgment.

On February 28, 2019, NHA filed its reply to the opposition. (DE 97). As stated in Sections II.b.i and ii, *infra*, NHA's brief does not appear to address Ms. Goins's FLSA-related arguments. (*Id.*; DE 93). Goins's scattershot presentation is likely to blame, so I will permit NHA to make a supplemental response.

### b. Claims

The Complaint contains five counts, two of them now withdrawn. I review the allegations.

In Count One, Ms. Goins brings a claim for violations of the Fair Labor Standards Act (FLSA) for failure to pay overtime wages and for retaliation. (Cplt. ¶¶ 31–36). Ms. Goins alleges that the New Jersey Department of Labor determined that she and other employees should have been paid overtime for work. (*Id.* ¶ 31). NHA paid some co-workers overtime in June 2014, but she was never paid. (*Id.* ¶ 32). She also alleges that she asked NHA why she was not paid but did not receive a response. (*Id.* ¶¶ 33–34). Further, Ms. Goins alleges that NHA knowingly and willfully failed to pay her overtime wages, which constituted a constructive discharge of her employment. (*Id.* ¶¶ 35–36).

In Count Two, Ms. Goins brings a claim for violations of the Conscientious Employee Protection Act ("CEPA"). (*Id.* ¶¶ 39–42). She alleges that NHA asked her to perform illegal acts in connection with: (1) the public contracts she was instructed to prepare and (2) her complaints about failure to pay her overtime wages. (*Id.* ¶ 39). Ms. Goins alleges that she objected to and refused to perform any illegal acts and, as a result, NHA retaliated against her. (*Id.* ¶ 40–41). As an example, she alleges that NHA instructed her coworkers to not ask her questions even though she had the knowledge to answer those questions. (*Id.* ¶ 41a).

In Count Five, Ms. Goins brings claims for racial discrimination in violation of NJLAD and the Civil Rights Act, § 1981. (*Id.* ¶¶ 49–52). Ms. Goins states that she is racially black and Native American. (*Id.* ¶ 50). First, she alleges that NHA treated Ms. Goins's white co-worker, who was similarly situated to Ms. Goins, more favorably, by excusing the co-worker from work and having others do her work for her. (*Id.* ¶ 49). Second, Ms. Goins alleges that she was subjected to abuse and harassment that resulted in a hostile work environment. (*Id.* ¶ 51). She alleges that she has not been able to find suitable substitute employment and believes that NHA is preventing her from getting hired. (*Id.* ¶ 52).[2]

### c. Hearsay

Before surveying the material facts, I clarify one issue of law. NHA makes a general argument that "Summary Judgment should be granted because Plaintiff's opposition is based upon unsupported assertions, bare allegations, speculation, and hearsay." (DE 97 p.1).

On summary judgment, courts consider hearsay as follows:

> The rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial. In ruling on a motion for summary judgment, the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial. The proponent need only 'explain the admissible form that is anticipated.'" Thus, in ruling on Defendants' motion for summary judgment, the district court should have limited its inquiry to determining if the out-of-court statements Plaintiffs were relying on were admissible at trial.

---

[2]    Ms. Goins has expressly withdrawn Counts Three and Four. Count Three claimed that NHA failed to accommodate her disability in violation of NJLAD. (*See* PRSOF ¶ 28 ("Plaintiff withdrew her claim for failure to accommodate a disability"); Cplt. ¶¶ 43–46). Count Four alleged sex discrimination in that a less qualified male was promoted to a position over that of Ms. Goins. (Cplt. ¶ 47). (*See* DE 89 p. 25 ("Plaintiff, having had the benefit of discovery, [now] withdraws her claims of sex discrimination - failure to promote and instead believes her failure to be promoted was a result of retaliation against her for her CEPA protected complaints.").

*Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238–39 (3d Cir. 2016) (internal citations omitted) (holding that out-of-court statements the plaintiffs relied on were admissible at trial when "[p]lantiffs identified the out-of-court declarants . . . and noted their availability to testify"). *See also* Fed. R. Civ. P. 56 (advisory committee notes to 2010 edition) ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.") Thus, if the party submitting hearsay explains the admissible form that is anticipated for trial, the court will consider the evidence on summary judgment. *See Frilando v. Bordentown Driver Training Sch., LLC*, No. 2:15-cv-02917-KM-JBC, 2017 WL 3191512, at *15 n. 19 (D.N.J. 2017) (McNulty, J.) ("Frilando argues Diab's testimony concerning what the authorities told him is inadmissible hearsay. Bordentown says it is not hearsay because it is not being offered to prove the truth of the statement. The rule in this circuit is [contained in *Fraternal Order, supra*]. I accept Bordentown's explanation and therefore consider Diab's testimony on this motion." (internal citations omitted)); *see also Watkins v. Wells Fargo Bank, N.A.*, No. 15-cv-5712, 2017 WL 2399086, at *4 n. 3 (D.N.J. June 2, 2017) ("Plaintiff argues that Wells Fargo's records cannot be considered by this Court on summary judgment on the grounds of hearsay. Plaintiff is incorrect. [citing *Fraternal Order, supra*]. . . Here, Defendant has proffered that these documents are capable of being admissible at trial as business records under Federal Rule of Evidence 803(6)." (internal citations omitted)).

Many, perhaps most, summary judgment submissions contain hearsay. (Affidavits, for example, are ordinarily inadmissible at trial.) NHA's blanket objection, then, is not well taken. NHA's only specific hearsay objection relates to exhibits containing newspaper articles and screenshots of LinkedIn pages. (DE 97 p. 1–3). To the extent it may be important to rely on those articles or internet print-outs, then, I will consider them to the extent permissible under the standards of *Fraternal Order, supra*.

### d. Material facts[3]

NHA[4] employed Ms. Goins as a coordinator of contractual operations from October 2012 until her resignation in September 2014. (DSOF, PRSOF at ¶ 3). Shari Hamilton, the Director of Procurement and Contract at NHA, supervised Ms. Goins. (*Id.* at ¶ 4).[5]

#### i. Timekeeping and NHA's overtime policy

NHA used a hand punch-in/punch-out system to keep track of the time worked by employees. (DSOF, 89-1 at ¶ 5). Ms. Goins agrees (PRSOF ¶ 5), but adds that NHA used overtime slips to record overtime and pay employees. For working overtime (*Id.*) (citing Ex. 4, Hamilton Dep., DE 89-3 pp. 42–101 (25:1–25 therein)).

Ms. Hamilton reminded Ms. Goins to punch in and out at the correct times based on her approved work schedule. (DSOF, PRSOF ¶ 6). Ms. Goins admits this, but denies any implication "that Ms. Goins did not work past her assigned hours." (PRSOF ¶ 6). (Ms. Goins's allegations that she worked past her scheduled hours are addressed at Section I.f.i, *infra*.)

NHA had a policy that employees would be paid overtime only when they had prior approval to work overtime. (DSOF, 89-1 ¶ 7). NHA asserts that Ms. Goins was aware of and understood that overtime policy. (DSOF ¶ 8) (citing

---

3     Plaintiff's counsel has failed to provide several documents that are listed in her declaration or relied upon in her statements of fact and briefs. *See* Fed. R. Civ. P. 56(c)(1) (2010 Advisory Committee Notes) ("Materials that are not yet in the record--including materials referred to in an affidavit or declaration--must be placed in the record."). Exhibit 32, though cited, is not filed. It is said to be an oversized "spreadsheet the plaintiff prepared of her overtime hours at the NHA." (Foster Decl., DE 89-2 ¶ 32). "Audio Exhibits" 1 and 2, also cited, are not on the docket, and transcripts do not appear there, either. If these documents have been furnished, counsel is requested to direct the court to the relevant cover letters or other evidence of submission.

4     NHA asserts that it is the largest public housing authority in New Jersey and the eleventh largest in the nation. (DSOF ¶ 1). It claims a portfolio of 44 public housing communities with a total of 8,000 rental units scattered throughout the city of Newark. (DSOF ¶ 2).

5     Ms. Goins asserts that when Ms. Hamilton was absent, she was supervised by others, including Kevin Medlin. (PRSOF ¶ 4) (citing Goins Dep. 98:21).

Goins Dep. 98:1–25, 137:1–6, 293:13–25; 294: 1–25). Ms. Goins denies, however, that she *always* understood and was aware of the policy. (PRSOF ¶ 8) (citing Ex. 10, DE 89-6 pp. 7–8; Ex. 11, DE 89-6 pp. 9–11; Ex. 30, DE 89-9 p. 7; Ex. B, Goins Dep., DE 85-5, 214:1–25, 322:1–25, 323:1–25, 388:6; Ex. 4, Hamilton Dep., DE 89-3 pp. 42–101 (219:1–25, 388:18 therein); Ex. 5, Fuentes Dep., DE 89-4 p. 56:1–25).[6] She admits, however, that there came a time (unspecified) at which she became aware of the policy.[7] Ms. Goins presents several citations to the effect that Ms. Hamilton required her to work overtime and that she did so. (*See* Section I.f.i, *infra*.)[8]

### ii. DOL Investigation

The U.S. Department of Labor (the "DOL") investigated the pay practices of NHA in 2013. (DSOF, PRSOF at ¶ 9).[9] Pursuant to that investigation, Ms.

---

[6]     Here and elsewhere, Ms. Goins's responding statement of facts argues that some fact adduced by the defendant is "irrelevant." (PRSOF ¶ 8; *see also* PRSOF ¶ 1, 2, 5). That is not the proper function of a Rule 56.1 statement. "The Rule 56.1 statement should only identify the universe of contested facts before the Court; arguments as to the force of those facts belongs in the brief. . . . To the extent a fact is admitted or denied, the Court will accept the submission. Any argument related to the legal relevancy of that fact will be disregarded." *Durkin v. Wabash Nat.*, No. 10-cv-2013, 2013 WL 1314744, at *6 (D.N.J. Mar. 28, 2013).

[7]     For example, In her deposition testimony, Ms. Goins states:

Q: Were you aware that there was a policy that you could not work overtime without your supervisor's approval?

A: Yes.

Q: And your initial testimony was that you didn't know that initially, but at some point you became aware that that was the policy.

A: Yes.

Q: Okay. So – but you could not tell me approximately when that was that you were made aware of that policy?

A: Correct.

(citing Ex. B, Goins Dep. DE 85-5 p. 98:4–15).

[8]     Ms. Goins states that she was told at the time of hiring that hers would be a salaried position with no overtime. (PRSOF ¶ 11). She provides no citation for this alleged fact.

[9]     While both parties identify the investigating agency as the "New Jersey Department of Labor" (*see* SOF, PSOF ¶ 9), they may have misspoken. The

Goins was interviewed. (*Id.* ¶ 10). Ms. Goins provided a written statement to the DOL investigator. (*Id.* ¶ 11). NHA asserts that, in her statement, Ms. Goins "advised that she did not work overtime at NHA." (SOF ¶ 11) (citing Ex. M, DE 85-16; Ex. B, Goins Dep., DE 85-5 pp. 387:17-25, 388:1-25).

A copy of the written statement, dated March 28, 2013, reads as follows:

As the coordinator I was basically preparing contracts, edit specifications, I do receiving of goods, processing of invoices, and performing background checks of vendors.

I work from 8:00 to 4:30 Monday through Friday. I don't work overtime. I get lunch for one hour. I do not work through lunch. I sometimes get interrupted for questions during lunch. I clock in and out for the start and end of the day. I start working after I punch in. No one ever changes my time. If I work past my scheduled hours I am not paid for that time.

I am paid a salary. If I were to work overtime and its wasn't approved I don't get paid for it. My pay is the same each week. I don't really work overtime.
I am not aware of anyone that works here under 18.

(Ex. M, DE 85-16 p. 2). Beneath that line is a signature, which appears to read "Cheryl Goins," attesting that the "above statement is both true and correct." (Ex. M, DE 85-16 p. 2). Beneath that is the signature of the witness, Travis J. Hall, Wage – Hour Investigator. (*Id.*).

Ms. Goins neither admits nor denies submitting this statement to the DOL:

[T]he original of her statement was never produced by defendant and plaintiff was not given a copy of the statement at the time she made it, so she does not know if the document is genuine or has been altered as NHA has altered other documents in the litigation.

(PRSOF ¶ 11). Thus Ms. Goins alleges forgery and fraud on the court—or rather, alleges that "she does not know" if it has occurred. She has provided no

investigation was, in fact, conducted by the *United States* Department of Labor ("DOL")—in particular, the Northern New Jersey District Office of the DOL. *See* Ex. M, DE 85-16 p. 2 (stating on the letterhead "U.S. Department of Labor"); *See* Ex. Q, DE 97-2 p. 4 (listing the office address of the DOL as the Northern NJ District Office).

evidence of that, and she surely knows if she supplied a signed, sworn statement to the DOL. (Her submission of a statement to the investigators, for example, is the foundation of her retaliation claim.) (PRSOF ¶ 11). This equivocal maybe-accusation is insufficient to raise an issue of fact as to the genuineness of the DOL statement.

From the DOL statement, it appears that Ms. Goins stated that "*[i]f* I work past my scheduled hours I am not paid for that time," but that she "did not *really* work overtime." (Ex. M, DE 85-16 p. 2; emphasis added). Ms. Goins argues that the term "overtime" is ambiguous, as it can mean either the extra hours worked or the wages paid for those hours. *See* Section II.b, *infra.*

### iii. Resignation

On either June 11 or 12, 2014, Ms. Goins received a Verbal Notice of Disciplinary Action—her first. ((DSOF ¶¶ 18, 19; PRSOF ¶ 18). On June 12, 2014, Ms. Goins received a performance improvement plan ("PIP"). (*Id.* ¶ 20). Defendants assert that Ms. Goins received the PIP because of poor work performance. (DSOF ¶ 20) Ms. Goins asserts that she received it in retaliation for her CEPA complaints. (PRSOF ¶ 20). On June 16, 2014, Ms. Goins took a leave of absence, purportedly for stress. (DSOF, PRSOF ¶ 21).

In September 2014, Ms. Goins submitted her resignation to NHA. (DSOF, PRSOF ¶ 22). The parties disagree as to what prompted Ms. Goins to resign. (DSOF, PRSOF ¶ 23). They agree that prior to Ms. Goins's resignation, NHA had already determined to terminate her employment. (DSOF, PRSOF ¶ 24). However, they disagree as to when NHA's plan to terminate Ms. Goins originated. (*Id.*).

### e. Supplemental facts

In her response to the statement of facts, Ms. Goins has, on multiple occasions, asserted facts that are tangential to the issue. (*See* PRSOF). Further, she has raised facts in her briefing that she failed to state in her response to the statement of material facts. (DE 89; DE 93-1). To reiterate: Any such facts she believed were relevant to her opposition should have been placed in a

numbered supplemental statement of disputed material facts, with each fact appropriately cited to the underlying record. *See* L. Civ. R. 56.1. I have nevertheless surveyed this submission to glean such facts as may be material to this summary judgment Opinion.[10]

First, Ms. Goins alleges that, as a result of the DOL investigation, the NHA and DOL entered into an agreement. Second, Ms. Goins alleges that she worked overtime hours. Third, Ms. Goins alleges that a number of articles have come out about her. Fourth, she alleges that NHA failed to send her to the Rutgers Public Purchasing conference.

### i. The DOL Agreement

Ms. Goins asserts that, as a result of the DOL investigation, on March 10, 2014, NHA and the DOL entered into a Back Wages and Compliance Agreement (hereinafter, the "DOL Agreement") in which NHA agreed to pay employees all back wages from the period of March 27, 2011 to March 24, 2013, totaling $1,072,709.53. (Exhibit 11). Because NHA attaches a copy of the DOL Agreement to its reply brief, I will deem this fact undisputed. (*See* Ex. Q, DE 97-2). As discussed *supra*, Ms. Goins asserts that she worked overtime during that period (but also, apparently, at some later time or times).

---

[10] I highlight here that these supplemental facts are by no means a complete account of every factual allegation in the fact section of Ms. Goins's opposition brief. In the brief, the argument section often fails to connect alleged facts to the elements of a claim. In general, the issues not discussed in the brief will not be considered. *Travitz v. Ne. Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.")(citations omitted); *Kadetsky v. Egg Harbor Twp. Bd. of Educ.*, 82 F. Supp. 2d 327, 334 n.5 (D.N.J. 2000) (finding "casual reference" to a claim results in waiver). For that reason, this Opinion, for the most part, focuses its review on the factual statements that Ms. Goins actually took the trouble to develop into a claim. (As an example, I cite factual allegations related to Ms. Whitney, because counsel has made no effort to connect them to a claim.) (*See infra* II.b.iv).

On a similar note, there are some factual contentions I have bypassed because they are mooted by other rulings. For example, I do not review many of Ms. Goins's kitchen-sink allegations of CEPA retaliation because that claim is being dismissed on the simple fact that Ms. Goins has not identified the laws she believed NHA violated.

In its reply brief, NHA asserts that the DOL provided a list of employees that it contended were entitled to overtime payments. Ms. Goins was not on the list. (DE 97 p. 4) (citing Ex. Q, DE 97-2).

Ms. Goins asserts in her statement of facts, with no citation to the record, that when she "wrote to Sybil Bryant to ask her why she did not get an overtime check as everyone else did, Sybil did not respond, but instead she advised Cheryl that if she failed to return to work she would be fired." (DE 89 p. 13).[11]

### ii. Overtime

Neither party has submitted evidence of Ms. Goins's daily work hours. Her statement to the DOL, however, indicates that her regular hours were from 8:00am to 4:30pm, Monday through Friday. (See Ex. M, DE 85-16). Neither party has stated (1) how many hours Ms. Goins worked each week of her employment; (2) how many of those hours were overtime hours (i.e., beyond 40 hours as prescribed under the FLSA); and (3) how many of those overtime hours were uncompensated.

---

[11]    Defendants provide a list of those who were awarded back overtime pay, comprising 365 numbered entries, most of them redacted. Lines 143 through 146 contain surnames beginning with G, but Ms. Goins's name is not among them. (DE 97-2 p. 12–13). The list suggests that Ms. Whitney and Mr. Medlin received overtime payments, although the amount is redacted. (Id. pp. 18, 25).

Ms. Goins, with no citation to the record, asserts that NHA issued checks to employees in June 2014. (DE 89 p. 13). On the same topic, Ms. Goins alleges that she had overheard the payroll manager, Joe Botte, talking on the phone with his boss Aimee (no last name provided), saying that Ms. Hamilton had wanted to deduct something so Cheryl would not be paid overtime. (DE 89 p. 13 (citing Personal Notes, Ex. 6, DE 89-5 p. 28). No further detail is given.

Ms. Goins cites her personal notes, which are dated Tuesday, June 3. (No year is given, but the context suggests 2014, and in 2014, June 3 fell on a Tuesday). June 3, 2014 falls both outside the two year period encompassed by the DOL Agreement, and fell several months after the DOL Agreement was signed. Here, Ms. Goins tries to connect the alleged fact that the checks were sent out in June with the alleged fact that someone tried to manipulate her overtime in June. Since the DOL Agreement was dated well before, and Ms. Goins's name was not on it, any such connection appears impossible.

Ms. Goins states generally that "Ms. Hamilton instructed the plaintiff to punch out but required the work to be done." (PRSOF ¶ 6) (emphasis added). As proof, Ms. Goins cites to her own deposition testimony, an e-mail, and her personal diary entry. (PRSOF ¶ 6) (citing Goins Dep. p. 322–23; DE 89-6 pp. 1–2;[12] DE 89-5 p. 50). In her deposition, Goins testified that she had spoken with Ms. Hamilton "about the problem with her keeping me after hours, and then she would turn around and say, oh, you can punch out. But that's never the case . . ." (Ex. B, Goins Dep., DE 85-5 p. 322–23). Ms. Goins's personal diary entry, dated Thursday, April 17, 2014, states that Ms. Hamilton sent her an e-mail after work hours. (DE 89-5, p. 50).[13]

Finally, Ms. Goins provides an e-mail, possibly the one referred to in the diary entry. (DE 89-6 pp. 1–2).[14] This email, however, is not quite as advertised. The original message, time-stamped April 23, 2013 at 4:45 pm, is from Ms. Goins to Ms. Hamilton. (DE 89-6 pp. 1–2). In it, Goins provides an update on assignments and objectives. (*Id.*). Although the time stamp is very slightly after work hours, it does not demonstrate that Goins worked overtime or, if so, that she was not paid for it. Forwarding the email, apparently to herself, Ms. Goins writes in the forwarding message, that "this is proof of me working over my end time because [Ms. Hamilton] demanded this contract be

---

[12]    Ms. Goins cites to the e-mail dated April 23, 2013 in Exhibit 7. (*See* PRSOF ¶ 6). That email is located at DE 89-6 pp. 1–2.

[13]    I will make the favorable assumption that at trial Ms. Goins would testify in conformity with the journal entry. *See* Fed. R. Evid. 803(5). *But see Gilmore v. Federated Dep't Stores*, Inc., No. 06-cv-3020, 2008 WL 687260, at *2 n.3 (D.N.J. Mar. 11, 2008) (declining to consider personal journal entries on a motion for summary judgment).

[14]    This e-mail, dated July 17, 2015, contains an original and two forwarding emails. The messages track as follows: the original, dated April 23, 2013 at 4:45pm, is from "Cheryl Goins" to "Shari Hamilton," the second, on the same date, is from Cheryl Goins to a Yahoo account (presumably, her personal account); and the third, dated July 17, 2015, is from that Yahoo account to a "cheryl-nha@mail.com (presumably, her work account).

posted on the portal before leaving out for the day." (DE 89-6 p. 1). But calling something "proof" in an email to oneself does not make it so.[15]

Ms. Goins also asserts that despite its policy, NHA "suffered or permitted" her to do work outside of regular hours. As an example, Ms. Goins points to an e-mail from herself to Ms. Hamilton, dated October 8, 2013 at 5:02pm. (DE 89-2 ¶ 8) (citing Ex. 30, DE 89-9 p. 7). (This email, too, Ms. Goins forwarded to her own email accounts.) Ms. Goins's email states, "attached are the files and current prevailing wages." Ms. Goins then describes the work required for the files, followed by "Don't worry, I did punch out on time. Just wanted to send you this stuff before going." (DE 89-9 p. 7). I will assume that Goins would testify at trial that she sent Ms. Hamilton a work e-mail after she had clocked out for the day. (Again, I note that neither party presented the Court with full data on Ms. Goins's hours worked, but I note that the e-mail is time-stamped 32 minutes after 4:30pm, when Ms. Goins's shift would have ended.). In further support, Ms. Goins points to Ms. Hamilton's deposition, in which Ms. Hamilton admits to an instance in which Ms. Goins stayed past her scheduled end time. (PRSOF ¶ 8) (citing Ex. 4, Hamilton Dep., DE 89-3 pp. 42–101 (219:1–25 therein)).

This evidence is frankly weak. Nevertheless, it is sufficient to create an issue of material fact as to whether Ms. Goins worked at least very small amounts of overtime for purposes of the FLSA. As is typical, however, Ms.

---

[15]    According to Ms. Goins, Ellen Fuentes testified that Goins "did stay and work late at Ms. Hamilton's request," (PRSOF ¶ 8) (citing Ex. 5, Fuentes Dep., DE 89-4 p. 15 (56:1–25 therein)). That is not a correct characterization of the cited testimony of Fuentes:

> [Question by Ms. Foster]: okay. Do you ever remember Ms. Hamilton directing Ms. Goins to stay late and work?
>
> . . . .
>
> Witness: I've seen her come over to her area with paperwork and – I don't know what the conversation was. Was it, You would have to stay to complete this or – I know she would stay late, you know, at times if she had to complete something.

(Ex. 5, Fuentes Dep., DE 89-4 p. 15 (56:7–16 therein)).

Goins fails to close the loop—*i.e.,* she does not direct the Court to pay records showing that she was not paid overtime wages for those particular days.

### iii. Newspaper articles

In her briefing, Ms. Goins asserts that newspapers published false articles about her after she filed her Complaint. (DE 93-1 p. 13; DE 89 p. 23). Although NHA lodges a hearsay objection, Ms. Goins is not seeking to introduce these articles for the truth of the matter asserted therein. On the contrary, she is asserting that they are false. Looking ahead, however, she has failed to connect these articles to NHA in any way. I discuss those articles further at Section II.b.ii.1.b, *infra.*

### iv. Public purchasing conference

As discussed at Section II.b.ii.1.b, *infra,* Ms. Goins asserts in her briefing that defendants refused to pay for her attendance at the Rutgers Public Purchasing Conference and required her to take a vacation day to attend. (DE 93-1 pp. 8–9) (citing Ex. 7, DE 89-6 p. 1). Other co-workers, she says, such as Kevin Medlin and Dashon Parker, had the same or similar classes paid for. No basis for Goins's knowledge of this fact is stated.

For the proposition that Mr. Parker had his classes paid for, Ms. Goins provides no record support at all.

For the proposition that Mr. Medlin's continuing education classes were paid for, Ms. Goins cites Ex. 6, DE 89-5 "CG 889". That page number does not exist in Exhibit 6, and I will not sift through the nearly 50 pages of handwritten notes to find whatever counsel believes she is referring to. Ms. Goins also cites to Ms. Hamilton's deposition. Hamilton testified that, as Director of procurement and contracts, she was required to maintain certification. (Ex. R, DE 97-3, p. 152). For an employee who was merely a procurement coordinator, certification not required, although it was preferred. (*Id.*). Hamilton testified that she asked Kevin Medlin, who was not seeking recertification, to attend the Rutgers Public Purchasing Conference on her behalf and then report back what he had learned. (*Id.; see also* Ex. 4, Hamilton Dep., DE 89-3 pp. 42–101,

(151:12–21 therein)). At some point in 2014, Mr. Medlin, who was on Ms. Goins's team, was promoted to senior procurement analyst. (see Hamilton Dep., Ex. C, DE 85-6 p. 168:12–17) No connection is drawn between that promotion and the Rutgers Public Purchasing Conference, nor is it stated whether the promotion occurred before or after the conference.

## II. Discussion

### a. Legal standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a Court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654,

657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### b. Analysis

I will consider Ms. Goins's remaining claims in the following order. In Section II.b.i, I consider her claim for FLSA overtime payments. In Section II.b.ii, I consider her claim of FLSA retaliation. In Section II.b.iii, I consider her claim of CEPA retaliation. Finally, in Section II.b.iv, I consider her claims of racial discrimination.

### i. FLSA uncompensated overtime

NHA argues that Ms. Goins's FLSA overtime claim cannot survive, primarily citing her sworn statement to the DOL that she did not work overtime. (DE 85-2 p. 6). Ms. Goins's opposition brief provides no legal argument in support of her FLSA overtime claim. (DE 89 p. 24). Instead, she

points the Court to her own motion for partial summary judgment. That motion, recall, I have terminated for extreme tardiness, in violation of court orders that granted counsel for Ms. Goins's own requests for adjournments. (DE 96). In that motion, Ms. Goins charges the defendants with spoliation because they have failed to produce her overtime timesheets, which would have demonstrated her hours worked and supported her claim. (DE 93-1 pp. 9 – 11). Not wishing to visit the sins of the attorney on the client, I have addressed the spoliation argument at Section II.b.i.2, *infra*.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). Generally, an employer must pay its employees at least a minimum hourly wage for work performed and must pay one and one-half times the employee's regular wage for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206, 207. While the FLSA does not define work, Department of Labor regulations settle that:

> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time.

29 C.F.R. § 785.11. See *Clarke v. Flik Int'l Corp.*, No. 17-cv-1915, 2018 WL 3930091, at *2 (D.N.J. Aug. 16, 2018) (Chesler, J.) (citing 29 C.F.R. § 785.11 in an FLSA action).

Section 216(b) of the FLSA grants employees the right to bring an action to recover damages for uncompensated overtime work. However, "an individual employee's right to bring an action pursuant to § 216(b) terminates once that employee is named in a complaint filed by the Secretary of Labor pursuant to § 216(c) or § 217" *Ahmad v. Daniyal Enterprises, LLC*, No. CV 2:14-1142-SDW-SCM, 2015 WL 6872481, at *3 (D.N.J. Nov. 9, 2015). To recover overtime

compensation under the FLSA, "an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal citations omitted).

### 1. DOL Statement

NHA argues that because Ms. Goins stated to the DOL that she did not work overtime, and because she was aware of the NHA overtime policy, her FLSA claim for payment of overtime wages must fail. (DE 85-2 p. 7). Ms. Goins counter-argues that her statement to the DOL does not preclude her claim because (a) it was ambiguous, and (b) it was given some eighteen months before her resignation. (DE 93-1 p. 11–12).[16]

Ms. Goins argues that her own statement to the DOL is inherently ambiguous because "overtime" can have two meanings—either *pay for* work after her scheduled hours or simply *work* after her scheduled hours. I do not find that the sentence "I never really worked overtime" is infected with that ambiguity.

Because Ms. Goins has testified that she "worked past her normal hours" there may be an issue of fact as to that narrow issue—at least as to the period following the DOL settlement, if not before. (Goins Dep. 143:1–25). Such testimony, at trial, might of course be subject to effective impeachment with the earlier DOL statement. More fundamentally, however, it falls short of Ms. Goins's obligation to "show the *amount* and *extent* of [her] overtime work as a matter of just and reasonable inference." *Davis*, 765 F.3d at 241. As noted at Section I.f.i, *supra,* neither party has provided the Court with anything specific

---

[16]     Furthermore, Ms. Goins asserts that she "testified that no one fully explained to her the NHA overtime policy at the time she had the interview or early in her employment." (DE 93-1 p. 12) (citing Ex. B, Goins Dep. DE 85-5 pp. 97–98). What Goins actually said in her deposition, however, is that she was not aware of the policy initially, but learned about it at some later time that she could not specify. (*Id.* p. 98:4–15).

regarding Ms. Goins's total hours worked, the amount of overtime hours worked, preapprovals if any, and overtime pay, if any.

If that were all, summary judgment for the defendant might be appropriate.

## 2. Spoliation

Ms. Goins also argues, however, that "Defendant failed to produce the overtime timesheets that support plaintiff's claim, so the court must accept the plaintiff's records of her hours which she has provided in the spreadsheet." (DE 93-1 p. 9) (The spreadsheet is not provided, however.) NHA, as employer, has failed to come forward with evidence of hours worked and wages paid. I do not suggest that it has the burden of proof—it doesn't—but this is evidence NHA might be expected to possess and produce in discovery. NHA's failure to maintain overtime slips, says Ms. Goins, constitutes spoliation. (DE 93-1 p. 10–11). It follows that a fact finder may draw an adverse inference against the spoliator. (DE 93-1 pp. 9–11).

"Spoliation is usually referenced in instances where evidence has been altered or destroyed." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (internal citations omitted). However, "under certain circumstances, nonproduction of evidence is rightfully characterized as spoliation." *Id.* Thus "when the contents of a document are relevant to an issue in a case, the trier of fact generally *may* receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir.1995) (internal citations omitted) (emphasis added).

For a Court to find spoliation against a party, four factors must be present: (1) "the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party. *Bull*, 665 F.3d at 73. Once found,

spoliation is punishable by sanctions, including the spoliation inference. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78–79 (3d Cir. 1994).[17]

To show that defendants have failed to produce overtime timesheets, Ms. Goins points the Court to Exhibit 16, an e-mail from defendant's counsel, Mr. Gregory Preston to plaintiff's counsel Ms. Elizabeth Foster. (DE 93-1 p. 11 ("Here, there is no dispute that the overtime slips existed or that they were requested by the plaintiff, and NHA's lawyer asserted that the slips could not be found." (citing Ex. 16, DE 89-7 p. 32)). In the e-mail, dated August 5, 2016, Mr. Preston states: "[r]egarding the overtime slips, my client is undertaking a search for same." (Exhibit 16, DE 89-7 p. 32. *See also* Foster Decl. DE 89-2 ¶ 32 ("Ex. 16 is an email from Greg Preston, Esq. to Liz Foster stating that NHA cannot find the overtime slips that the plaintiff requested.")). Fact discovery closed on April 14, 2017. (DE 65). Granting every indulgence, this might be enough to raise an issue of fact regarding spoliation. If NHA is found to have

---

[17]     The Third Circuit provides a helpful summary on the rationale of the spoliation inference:

> Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Jamie S. Gorelick, Steven Marzen and Lawrence Solum, *Destruction of Evidence,* § 2.1 (1989). Such evidence permitted an inference, the "spoliation inference," that the destroyed evidence would have been unfavorable to the position of the offending party. As Judge Breyer put it in *Nation-wide Check Corp. v. Forest Hills Distributors, Inc.,* 692 F.2d 214, 218 (1st Cir.1982), "the evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document." As Judge Breyer also noted, the spoliation inference is also seen as having "prophylactic and punitive effects." *Id.* The admissibility of spoliation evidence and the propriety of the spoliation inference is well established in most jurisdictions, including Pennsylvania. *See e.g., Nation-wide Check Corp.,* 692 F.2d 214 (1st Cir.1982); *Mensch v. Bic Corp.,* 1992 WL 236965 (E.D.Pa.1992) (citing Pennsylvania cases); *Gorelick, et al., supra,* § 2.24.

*Schmid,* 13 F.3d at 78. *See also Mosaid Techs. Inc. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (sanctioning a defendant with the spoliation inference).

destroyed or failed to produce the timesheets, an adverse inference might be justified.[18]

We have not, however, heard NHA's side, and the reason is not hard to find. Ms. Goins did not assert her spoliation argument in response to NHA's summary judgment motion, but only in her own belated motion for summary judgment, which now has been administratively terminated.

I will therefore provisionally deny summary judgment on the overtime claims, and grant NHA the opportunity to respond.[19]

### ii. FLSA retaliation

In Count One, Ms. Goins also makes a claim for retaliation under the FLSA. Under the FLSA, it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C.A. § 215(a)(3).

Unlawful retaliation is analyzed within the *McDonnell Douglas* burden-shifting framework. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Cononie v. Allegheny Gen. Hosp.*, 29 Fed. App'x 94, 95 (3d Cir. 2002) (FLSA claims analyzed pursuant to *McDonnell Douglas* rubric). Under the *McDonnell Douglas* framework, "the employee carries the initial

---

[18]    I note that Ms. Goins has, herself, supplied several copies of some overtime timesheets. (Exhibit 34, DE 93-2 pp. 2–17). These timesheets are accompanied by, what appears to be, time sheets from scattered weeks throughout 2012 and 2013. (*Id.*) Given the spoliation allegation, I presume she provided these sheets from her own personal records, not those of NHA.

[19]    Ms. Goins also argues that the court "must accept" the calculation of overtime hours in "the spreadsheet." (DE 93-1 p. 9) (citing to nothing in the record). As outlined above, Ms. Goins cites, but has not submitted, such a spreadsheet, which she refers to as "Exhibit 32." (*See* DE 93-3 ¶ 8; DE 89-2 ¶ 32). Nowhere else in her papers does Ms. Goins offer any information regarding her specific hours worked. I need hardly add, of course, that insertion of numbers into a spreadsheet, long after the event, does not necessarily turn them into evidence.

burden of establishing a prima facie case of retaliation." *Lowery v. Yoram Koby & JYK, Inc.*, No. 11-cv-5088 (KM), 2016 WL 324948, at *3 (D.N.J. Jan. 26, 2016). If the employee establishes a prima facie case, the burden then shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Lowery*, 2016 WL 324948 at *3. If the employer can do so, "the presumption of retaliatory discharge created by the prima facie case disappears and the burden shifts back to the employee." *Id.* (internal citations omitted). The employee then must persuade the "fact finder that the employer's reason was false and that retaliation was the real reason." *Id.* The ultimate burden of proof remains with the employee. *Id.*

### 1. Prima facie case

To assert a claim for retaliation under the FLSA, the employee must prove three elements: (1) the employee engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). I address each below.

### i. Protected activity

NHA argues that Ms. Goins has failed to prove that she engaged in an activity protected by the FLSA. (DE 85-2 p. 8). In the Complaint, Ms. Goins's retaliation claim is based on her alleged complaints to the DOL. (Cplt. ¶¶ 37, 38). In her briefing, however, she has shifted her ground. (DE 89 pp. 22–24); Rather than arguing that NHA retaliated against her for complaining to the DOL, she now asserts that NHA retaliated against her for *participating* in the DOL investigation. (*Id.*). That participation consisted of the sworn statement to the DOL.[20]

---

[20]    This is the same statement which, for other purposes, she says may have been forged or altered.

In her briefing, Ms. Goins also claims that she engaged in protected activity when she allegedly complained to Sybil Bryant that she had not been paid a special overtime payment like her co-workers. (DE 93-1 p. 10). In effect, Ms. Goins attempts

Under the FLSA, a plaintiff has engaged in a protected activity if she has "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has *testified* or is *about to testify* in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(3) (emphasis added). Defendants argue that, under that definition, Ms. Goins's interview with the DOL is not a protected activity. I find, however, that making this statement to DOL was protected activity for purposes of the FLSA.

"In interpreting a statute, the starting point is the language of the statute itself." *United States v. Gollapudi*, 130 F.3d 66, 70 (3d Cir. 1997) (internal citations omitted). "In most situations, the plain language rule is the preferred method of statutory interpretation[,] . . . and [o]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language. *Id.* (citing *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482–83, 83 L.Ed.2d 472 (1984)).

When engaging in interpretation of the FLSA, "this court must bear in mind . . . the twin principles that the Act is a remedial statute which 'must not be interpreted or applied in a narrow, grudging manner,' *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local*, 321 U.S. 590, 597 (1944), and that exemptions from FLSA coverage 'are to be narrowly construed against the employers seeking to assert them,' *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392

---

to bring a new claim for retaliation in her brief, asserting that NHA retaliated against her for complaints she made *after* the DOL investigation concluded and her co-workers had received payments for overtime. If Ms. Goins wishes to amend her complaint, she may seek leave to do so pursuant to Fed. R. Civ. P. 15(a)—although such a motion comes awfully late, and may not be granted. She may not, however, use her response to a summary judgment as a forum to raise new claims. *See Bey v. Daimler Chrysler Servs. of N. Am.*, No. CIV. 04-6186, 2006 WL 361385, at *11 (D.N.J. Feb. 15, 2006) ("[C]laims [that] were not alleged in the complaint . . . cannot be raised for the first time in opposition to a motion for summary judgment."). Because Ms. Goins does not plead this claim in her Complaint, I will not consider it on summary judgment. *Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 n. 5 (D.N.J. 2008) (Greenaway, J.) (declining to consider a new breach of contract claim on summary judgment when the plaintiff failed to plead that "particular claim" in the complaint).

(1960)." *Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 274 (D.N.J. 1997). *See also Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (noting that the FLSA is a remedial statute to be construed broadly). The purpose of the retaliation protections afforded under the FLSA was to encourage employees to feel "free to approach officials with their grievances . . . [f]or it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960).

Here, the statute is of little help; neither 29 U.S.C. § 215 nor the definitions section of the FSLA, *see* 29 U.S.C. § 203, defines "testify" or "about to testify." Black's Law Dictionary (10th ed. 2014) defines "testify" as "to give evidence as a witness" or "to bear witness," although it has no entry for the phrase "about to testify." I look to the case law.

In *Bowen v. M. Caratan, Inc.*, a court in the Eastern District of California held that an employee engaged in a protected activity when she had been identified as a witness in a DOL audit, even though she did not actually interview in the audit nor had she given her employer notice of a complaint. *Bowen v. M. Caratan, Inc.*, 142 F. Supp. 3d 1007, 1022 (E.D. Cal. 2015) (O'Neill, Chief J.). There, the Court held that "the [p]laintiff was 'about to testify for the DOL audit.' Such an audit is an FLSA-related proceeding for the purposes of § 215(a)(3)." *Id.*

On a similar interpretation issue, in *Kasten v. Saint-Gobain Performance Plastics Corp.*, the Supreme Court considered the following when reaching the holding that oral complaints are protected under the FLSA:

> Given the need for effective enforcement of the National Labor
> Relations Act (NLRA), this Court has broadly interpreted the
> language of the NLRA's antiretaliation provision—"filed charges or
> given testimony," 29 U.S.C. § 158(a)(4)—as protecting workers who
> *neither* filed charges *nor* were "called *formally* to testify" but simply
> "participate[d] in a [National Labor Relations] Board investigation."
> *NLRB v. Scrivener*, 405 U.S. 117, 123 (1972) (emphasis added). The
> similar enforcement needs of this related statute argue for an
> interpretation of the word "complaint" that would provide "broad

> rather than narrow protection to the employee," id., at 122, 92
> S.Ct. 798 (and would do so here without pressing statutory
> language to its limit).

*Kasten*, 563 U.S. 1, 13 (2011) (citing *NLRB v. Scrivener*, 405 U.S. 117, 123 (1972) (emphasis in original)). There, the Court emphasized the need to interpret the statute broadly. Moreover, the Court noted that an antiretaliation provision in the NLRB protected employees who had merely participated in the enforcement agency's investigation. Here, examining the term "testify," I am called to apply a similarly broad interpretation to the antiretaliation provision of the FLSA.

Here, Ms. Goins did actually act as a witness, in the broad sense, in connection with a DOL audit. Like many other employees, she submitted a sworn statement pertaining to her overtime. That is protected activity for purposes of an FLSA retaliation claim.

### ii. Adverse employment action

Defendants argue that Ms. Goins did not suffer an adverse employment action subsequent to her DOL interview in March 2013. (DE 85-2 pp. 8–9). Under the FLSA, retaliatory conduct rises to the level of a materially adverse action if the conduct alters the "employee's compensation, terms, conditions or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997); *see also Lowery v. Yoram Koby & JYK, Inc.*, No. CV 11-5088 (KM), 2016 WL 324948, at *4 (D.N.J. Jan. 26, 2016) (McNulty, J.).

Ms. Goins argues that she suffered four adverse employment actions: NHA's failure to pay for her attendance at the Rutgers Public Purchasing conference; the appearance of newspaper articles and internet postings; her separation from employment at NHA in September 2014; and failure to pay her overtime, allegedly resulting in a constructive discharge.

**(i)** There is evidence that NHA did not pay for Ms. Goins to attend the Rutgers Public Purchasing Conference and required her to take a vacation day

to attend. (DE 93-1 pp. 8–9) (citing Ex. 7, DE 89-6 p. 1)).[21] This, says NHA, was not an adverse employment action. (DE 97 pp. 6–7). I agree.

To begin with, Ms. Goins concedes that "under the FLSA . . . government employers need not pay for training time." (DE 89 p. 24 n. 27). It is at best unclear whether it was necessary for Ms. Goins to attend this conference to maintain her certificate.[22] Nor has Ms. Goins established that the certificate was required for her job as contract coordinator. [23]

The impact, if any, on Ms. Goins's employment is too slight to justify a jury finding that failure to pay for this training session was an adverse employment action.

**(ii)** Ms. Goins attaches articles that appeared in newspapers after she filed her Complaint. (DE 93-1 p. 13; DE 89 p. 23). One, she says, incorrectly states that she was terminated from NHA, rather than that she quit. She believes that either Ms. Bryant or Ms. Hamilton must have been behind that false statement, rendering it an adverse employment action. (DE 93-1 pp. 14). Another article, she contends, misrepresented a previous lawsuit she brought against another employer (not NHA);[24] that article, she says, has "placed her in

---

[21]    Ms. Goins's counsel also cites to "main brief pp. 7, 23" to support her assertion. (DE 93-1 pp. 9). I am not certain which brief she is referring to, but in any event, statements in briefs are not evidence.

[22]    Ms. Goins contends that she "had to comply with continuing education requirements in order to maintain her certification as a registered public purchasing specialist in New Jersey." (DE 89 p. 19 n. 25) (citing to https://cgs.rutgers.edu/programs/publicpurchasing#ContEd). However, the very same website she cites states, "continuing education credit can be earned by attendance at seminars, workshops, classes or conferences and through numerous methods of professional development." Ms. Goins's allegation requires further support and explanation.

[23]    She contends that coworkers were paid to attend continuing education classes. As to coworker Dashon Parker, she has submitted no such evidence. As to coworker Kevin Medlin, her evidence is equivocal at best. *See* Section I.e.iv *supra*. Here, however, the issue is not whether the employer was evenhanded; it is whether the action rose to the level of an adverse employment action.

[24]    Ms. Foster represented Ms. Goins in that lawsuit, which settled for $61,500 the same month that Ms. Goins resigned from NHA. (Ex. P, DE 85-19)].

a bad light and has made it impossible for her to find work in her chosen field for which she is highly trained. (DE 89 p. 23).

There is no evidence whatever that anyone at NHA was behind the allegedly false statements in these articles. Moreover, the articles apparently appeared *after* Ms. Goins left NHA. No reasonable juror could find that they constituted "adverse employment actions."

(iii) NHA allegedly did not pay Ms. Goins overtime throughout her employment, and in particular failed to pay her the "one time [sic] overtime payment that all members of the department received in June 2014.". (DE 93-1 p. 14). Once again, NHA does not address these arguments, no doubt because they were raised not in response to NHA's motion, but only in Goins's belated summary judgment motion, now terminated. (DE 97).

As found above, there is an issue of fact whether NHA failed to pay Ms. Goins wages for at least some minimal amount of overtime that she worked. Failure to provide compensation, if proven, would rise to the level of an adverse employment action. *See Robinson*, 120 F.3d at 1301.

Ms. Goins also claims, less persuasively, that the failure to pay overtime wages amounted to a constructive discharge. "To prove a constructive discharge claim a plaintiff must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). In some circumstances, failure to pay overtime might amount to constructive discharge, while in others it would not—*e.g.*, if the plaintiff were owed for 15 minutes of overtime work, that probably would not be regarded as tantamount to a discharge. To the extent Ms. Goins has claimed unpaid overtime wages, she has utterly failed to establish that the amounts involved are so significant as to amount to a constructive discharge. Since failure to pay overtime wages may in itself be an adverse employment action, however, the constructive discharge component may be superfluous for present purposes.

### iii.  Causation

The third step in a prima facie retaliation claim is a sufficient showing of causation, *i.e.*, a link between the protected activity and the adverse employment action that followed. Here, the claim falls apart. The evidence as presented does not raise a plausible inference of causation.

NHA argues that "Ms. Goins['s] adverse employment claim lacks merit because she was separated from her employment with NHA . . . eighteen months after she gave her statement to the [DOL]" in March 2013. (DE 97 p. 7). I agree that the connection, absent any other corroboration, is too attenuated.

The failure to include her in the NHA-wide, one-time overtime pay award in June 2014 occurred some fifteen months after Ms. Goins's statement to the DOL, so temporal proximity does not favor an inference of causation. But there is a more fundamental problem: the retaliation theory makes no sense. Many workers—hundreds, apparently—claimed that they had worked overtime without pay, and in June 2014 they received DOL-ordered compensation. Ms. Goins claims that she was omitted from the list of employees to be compensated in retaliation for her having made a statement to the DOL. This does not distinguish her case from those of the other employees (who did receive compensation). And the *reason* she did not receive compensation is clear: she did not claim it. In her statement to the DOL, she said that she had *not* worked overtime. The content of her statement also makes nonsense of the notion that the employer would retaliate; far from blowing the whistle on her employer's overtime practices, she exculpated NHA by informing DOL that she had not been denied overtime pay.

The only remaining form of "retaliation"—the alleged failure to pay her overtime (after the period of the DOL investigation, presumably) adds nothing. If it occurred, it is actionable under the FLSA. *See supra.* The retaliation theory is superfluous.

I therefore hold that a prima facie case of FLSA retaliation has not been established, and award summary judgment to NHA on this claim.

### iii. CEPA

NHA moves to dismiss Count Two, Ms. Goins's CEPA retaliation claim, on summary judgment. (DE 85-2, p. 10–16). In the original complaint, Ms. Goins alleged that she was retaliated against because she objected to illegal orders from her superiors. (DE 1 ¶¶ 39–42).[25]

CEPA retaliation claims are analyzed under the usual *McDonnell Douglas* framework, discussed at Section II.d, *supra. See Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 662 (N.J. 2012) (*McDonnell Douglas* framework applies to CEPA claims). CEPA was enacted to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Abbamont v. Piscataway Twp. Bd. of Educ*, 138 N.J. 405, 431, 650 A.2d 958, 971 (1994). To effectuate that aim, the statute provides, in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee . . . [d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law.

---

[25]    Initially, I must clarify that discriminatory failure to promote will not be considered as part of this claim. In the course of withdrawing her NJLAD discrimination claim, Ms. Goins casually lets drop that it nevertheless constituted CEPA retaliation:

> The plaintiff having had the benefit of discovery, withdraws her claims of sex discrimination -failure to promote and instead believes her failure to be promoted was as a result of retaliation against her for CEPA protected complaints, as discussed above.

(DE 89 p. 25). Absent a successful motion to amend the complaint, Ms. Goins may not state a new claim as a means of escaping summary judgment. *See* Fed. R. Civ. Pro. 15(a). *See also Bey v. Daimler Chrysler Servs. of N. Am.*, No. 04-cv-6186, 2006 WL 361385, at *11 (D.N.J. Feb. 15, 2006) ("[C]laims [that] were not alleged in the complaint . . . cannot be raised for the first time in opposition to a motion for summary judgment."). I will not consider her retooled failure-to-promote claim, and now turn to whether Ms. Goins has otherwise stated a prima facie case for CEPA retaliation.

N.J.S.A. 34:19-3(a)(l). A retaliatory action is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e).

To establish a cause of action for retaliation under CEPA, an employee must demonstrate four elements: (1) she had a reasonable belief that her employer's conduct violated a law, regulation, or clear mandate of public policy; (2) she performed a "whistle-blowing" activity under the act; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003); *Samowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 404 (3d Cir. 2007).

Right at the outset, Defendants note, Ms. Goins has failed to identify any law that she believed NHA had violated. To bring a CEPA claim, "the plaintiff must identify the authority that provides a standard against which the conduct of the defendant may be measured." *Hitesman v. Bridgeway, Inc.*, 93 A.3d 306, 320 (N.J. 2014). *See also Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 159–60 (3d Cir. 2017), *as amended* (Aug. 22, 2017) ("To satisfy the first element of a CEPA retaliation claims, a plaintiff must identify a law, rule, regulation, or clear mandate of public policy, that supports the basis of his CEPA claim as well as unacceptable practices in the defendant employer's business that contravene the identified authority."). *See also Fineman v. New Jersey Dep't of Human Servs.*, 640 A.2d 1161, 1169 (N.J. App. Div. 1994) *certif. denied*, 138 N.J. 267 (N.J. 1994), *abrogated on different grounds by Dzwonar v. McDevitt*, 177 N.J. 451, 463 (2003) ("[Summary judgment] motions brought by defendants at the conclusion of plaintiff's case, and at the conclusion of all the evidence, afforded to the trial judge opportunity to consider whether the plaintiff satisfied [her] burden to establish existence of a specific law, regulation, or other clear mandate of public policy.").

Here, Ms. Goins has failed to specify a single statute, rule, regulation, or source of law expressing a public policy against which the alleged facts can be measured. Rather, she has provided a sketch of at least seven incidents in which she alleges that she informed, or in some cases did not inform, her supervisors at NHA that an activity violated a law. (DE 89 pp. 4–5, 14–15). For example, she says she told Ms. Hamilton it was improper to use an expired contract without a proper bidding procedure. (*See id.* p. 4). For each incident, she broadly claims that *some* law was violated, or believed to be violated, but fails to specify *what* law she is referring to. *See, e.g., id.* (asserting that "there is a legal problem with using a contract that has expired rather than sending it out to be re-bid," that "the law is quite clear that a BRC is needed", or that sending a private bid via e-mail "is not permitted under the local contract law").

Ms. Goins has failed to identify the legal violations she reported, and the court will not speculate as to what they were. Because this is sufficient to require summary judgment in NHA's favor, I do not address NHA's other arguments.

### iv. Discrimination

NHA moves for summary judgment on Ms. Goins's claims for discrimination under NJLAD and 42 U.S.C. § 1981. In the Complaint, Ms. Goins alleges that NHA favored a similarly situated white co-worker by excusing that co-worker and letting others do her work for her. (Cplt. ¶ 49– 50). Ms. Goins claims that she was given other people's work in addition to her own. (*Id.* ¶ 50).[26]

In her opposition to summary judgment, Ms. Goins does not mention her original § 1981 claim. (DE 89) Instead, she has in effect attempted to transform her discrimination claim into a disparate-pay claim under NJLAD. (DE 89 pp.

---

[26]    Ms. Goins alludes to a hostile work environment on account of her race. (Within the same paragraph, she alleges abuse that was "based on her disability," which I assume is an accidental holdover from the now-withdrawn Count 3. (Cplt. ¶¶ 43–46, 51)). Neither party's brief addresses a racially-based hostile work environment claim. (*See* DE 85-2 pp. 18–19; DE 89). I therefore set it aside.

30–31). In her opposition brief, Ms. Goins states: "plaintiff did the same job as Nikki Whitney but was underpaid compared to her, and forced to do [Ms. Whitman's] work." (DE 89 p. 31). "[C]laims [that] were not alleged in the complaint . . . cannot be raised for the first time in opposition to a motion for summary judgment." *See also Bey v. Daimler Chrysler Servs. of N. Am.*, No. CIV. 04-6186, 2006 WL 361385, at *11 (D.N.J. Feb. 15, 2006).

While Ms. Goins folds in her previous theory that "she was forced to do Ms. Whitney's work," it is not developed factually. She sets forth no sufficient factual indicia that these ordinary complaints of workplace unfairness had a racial basis. Indeed, she makes little or no effort in her brief to connect her complaints to the elements of § 1981 or NJLAD.

Summary judgment in NHA's favor is therefore granted on these discrimination claims.

### III.  Conclusion

For the reasons set forth above, NHA's motion (DE 85) for summary judgment is **GRANTED** in part and **DENIED** in part as follows. All but one of Ms. Goins's claims are dismissed.

The sole surviving claim is for uncompensated overtime pursuant to the FLSA. As to that claim, the Court's analysis has been hampered by counsel's mode of presentation of the issues. Because the Court is obligated to search the record on a summary judgment motion, and because it wishes to ensure that substantial justice is done, irrespective of deficiencies in presentation, I am giving the plaintiff one more chance to make a coherent submission on the remaining FLSA uncompensated-overtime claim.

**Within 45 days, Ms. Goins may file a summary judgment motion on the FLSA uncompensated overtime claim. This motion shall conform in all respects to the Federal and Local Rules of Civil Procedure. It will be succinct. It will not contain extraneous factual material, but will focus on those facts germane to the claim that Ms. Goins worked overtime, the amount of hours worked, and the compensation allegedly owed. Each fact**

33

**will be cited to the specific place in the record where support for it may be found. Matters already decided will not be rehashed.**

NHA may file a response which may, at NHA's option, take the form of a response and cross-motion on the FLSA overtime claim.

An appropriate order follows.

Dated: March 29, 2019

Kevin McNulty
**United States District Judge**