**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHERYL GOINS, | Civ. No. 15-2195 (KM) (JBC) |
| Plaintiff, | **OPINION** |
| v. | |
| NEWARK HOUSING AUTHORITY, | |
| Defendant. | |

KEVIN MCNULTY, U.S.D.J.:

This is the latest in a series of Opinions this Court has issued in this matter.

As the parties are well aware, this action arises from plaintiff Cheryl Goins's past employment with defendant the Newark Housing Authority ("NHA"). Ms. Goins has alleged that NHA asked her to participate in illegal conduct, engaged in discriminatory and retaliatory behavior against her, and failed to pay her overtime wages. Prior Opinions of the Court on fully briefed motions have disposed of the majority of the claims in this matter. (DE 98, 99, 128)

Now pending before the Court is the second motion of defendant NHA for summary judgment (DE 110) and Ms. Goins's cross-motion for summary judgment (DE 112). The claim addressed by these motions is Ms. Goins's claim under the Fair Labor Standards Act ("FLSA") of failure to pay overtime wages.[1] Ms. Goins asserts that she repeatedly worked overtime and worked "off the

---

[1] Ms. Goins's counsel submits further briefing in support of Ms. Goins's FLSA retaliation claim. (*See* DE 112-1 at 16–19) That claim was dismissed on summary judgment on March 29, 2019. (DE 98, 99). Ms. Goins did not thereafter move for reconsideration of the dismissal of that claim. Accordingly, Ms. Goins's attempt here to belatedly revive that claim will be rejected. *See* Section IV, *infra*.

clock." Her employer, NHA, was aware that she worked this overtime. Nevertheless, NHA, says Goins, failed to pay her for this time. NHA denies these allegations.

For the reasons explained in this opinion, I will GRANT in part and DENY in part NHA's second motion for summary judgment (DE 110). I will DENY Ms. Goins's cross-motion for summary judgment (DE 112).

## I.   Background

### a. Procedural Background

This Opinion assumes familiarity with the procedural history and facts of this action. My prior opinion on Ms. Goins's motion for reconsideration of dismissal of her CEPA claim catalogues some of the multiple lapses in representation by plaintiff's counsel, Elizabeth Foster, Esq. (*See* DE 125) Sensing some personal difficulties which were not described in much detail, I attempted to exercise some compassion, consistent with some semblance of orderly procedure. The result has been a complex history of missed deadlines and (for the most part) multiple accommodations.

On July 17, 2015 Magistrate Judge Clark filed the original scheduling order. Because of several discovery disputes and scheduling issues, Magistrate Judge Clark extended discovery numerous times. (*See e.g.*, DE 19; DE 27; DE 34; DE 45; DE 51; DE 57; DE 65; DE 80)

On April 2, 2018, Magistrate Judge Clark filed a scheduling order setting deadlines for the filing of all dispositive motions. (DE 82) On May 9, 2018, plaintiff's counsel sought an amendment to the scheduling order, citing health issues in the plaintiff's immediate family. (DE 83) Magistrate Judge Clark granted the application, but provided that there would be "no further extensions." (DE 84) The scheduling order, as extended, required the parties to file dispositive motions by June 19, 2018, oppositions by July 17, 2018, and replies by July 31, 2018. (*Id.*)

On June 19, 2018 (the deadline for dispositive motions), NHA filed its first motion for summary judgment. (DE 85) Plaintiff's counsel requested and

obtained an extension of the deadline for filing opposition papers until August 3, 2018. Judge Clark's order granting the extension provided that there would be "NO FURTHER EXTENSIONS" of that particular deadline. (DE 87) (CAPITALS in original). Five months later, plaintiff's counsel had not filed any papers in opposition to summary judgment.

On January 3, 2019, the court issued a notice of call for dismissal pursuant to L. Civ. R. 41.1(a), returnable January 17, 2019. The Notice required that plaintiff's counsel file an affidavit of good cause setting forth the efforts of plaintiff's counsel to prosecute the action. (DE 88) No such affidavit was filed.

Instead, on January 15, 2019—a year after defendant's summary judgment motion was filed—plaintiff's counsel filed papers in response to that motion. The response was not accompanied by a motion for filing out of time, nor was there any explanation for the delay. (DE 89; DE 90) Understandably, NHA filed a letter objecting to the untimely filing, and in the alternative sought an extension of time to file a reply. (DE 91) This Court granted NHA the requested extension. (DE 92)

On January 22, 2019, now over six months late for the dispositive-motion deadline, plaintiff's counsel filed a motion for partial summary judgment. (DE 93) Again, understandably, NHA objected. (DE 94) On January 24, 2019, plaintiff's counsel submitted a letter providing the following nonspecific explanation for the motion's tardiness:

> I represent the plaintiff on this matter. I recently filed opposition papers on a summary judgment motion and a cross motion on this matter, they were due months ago, and defendant's counsel has objected that they were presented so late. Exceptional circumstances prevented my adherence to the scheduling order. I seek the court's guidance as to whether a formal motion is required to explain these issues. Thank you for your kind attention to this matter.

(DE 95)

In response, on January 25, 2019, this Court instructed that it "does not render advice as to matters of procedure, and its prior orders have been

3

explicit." (DE 96) I administratively terminated Ms. Goins's motion for partial summary judgment without prejudice, noting that plaintiff's counsel did not provide any description of the "exceptional circumstances" that prevented her from filing timely. I instructed plaintiff's counsel that she might renew her motion for summary judgment as to any issues that remained after disposition of NHA's summary judgment motion. (*Id.*)

Within her brief in opposition to summary judgment, Ms. Goins cross-referenced FLSA-related arguments contained in the brief she filed in support of her now-terminated motion for summary judgment. (DE 89 p. 24) I agreed to review those arguments, but only insofar as they bore on her opposition to NHA's motion for summary judgment. Because NHA—no doubt confused by plaintiff's scattershot presentation—failed to address the FLSA-related arguments, I permitted NHA to make a supplemental response.

On March 29, 2019, I filed an Opinion (DE 98) and Order (DE 99) granting NHA's summary judgment motion in part and denying it in part. I denied NHA's motion for summary judgment with respect to Count 1, Ms. Goins's claim under the FLSA of failure to pay overtime wages. All other claims were dismissed, including the remainder of Count 1 (FLSA retaliation); Count 2 (Conscientious Employee Protection Act ("CEPA")); and Count 5 (racial discrimination under the NJLAD and Civil Rights Act, § 1831). (*Id.*)[2]

As matters stood post-summary judgment, then, the FLSA overtime claim was the only claim remaining in the case. The issues having been narrowed, I then authorized Ms. Foster to refile her motion for summary

---

[2]    During the course of the parties' first round of summary judgment briefing, Ms. Goins expressly withdrew Counts Three (NHA failed to accommodate her disability in violation of NJLAD) and Four (a sex discrimination claim). (*See* DE 89-1 ¶ 28 ("Plaintiff withdrew her claim for failure to accommodate a disability."); DE 89 at 25 ("Plaintiff, having had the benefit of discovery, [now] withdraws her claims of sex discrimination - failure to promote and instead believes her failure to be promoted was a result of retaliation against her for her CEPA protected complaints."))

judgment, but only as to that surviving FLSA claim. My order contained very specific instructions as to the form such a motion should take.[3] (DE 99)

Instead, on April 8, 2019, Ms. Goins filed a partial motion for reconsideration, confined to the issue of my dismissal of the CEPA claim. (Plaintiff did not move to reconsider my dismissal of the FLSA retaliation claim or any other claim.) (DE 100)

On May 13, 2019, Ms. Foster requested a 14-day extension of plaintiff's deadline to file a renewed motion for summary judgment on the FLSA claim. (DE 104) I granted that extension until May 28, 2019. Ms. Foster failed to file her motion by the extended deadline that she herself had requested.

NHA, perplexed, requested guidance from the Court. It had expected to file an opposition to the reconsideration motion and cross-motion in response to Ms. Goins's summary judgment motion. Ms. Goins, however, had neither filed such a motion nor sought an additional extension. (DE 108) I therefore

---

[3]   My order reads as follows:

> The sole surviving claim is for uncompensated overtime pursuant to the FLSA. As to that claim, the Court's analysis has been hampered by counsel's mode of presentation of the issues. Because the Court is obligated to search the record on a summary judgment motion, and because it wishes to ensure that substantial justice is done, irrespective of deficiencies in presentation, I am giving the plaintiff one more chance to make a coherent submission on the remaining FLSA uncompensated-overtime claim.

> Within 45 days, Ms. Goins may file a summary judgment motion on the FLSA uncompensated overtime claim. This motion shall conform in all respects to the Federal and Local Rules of Civil Procedure. It will be succinct. It will not contain extraneous factual material, but will focus on those facts germane to the claim that Ms. Goins worked overtime, the amount of hours worked, and the compensation allegedly owed. Each fact will be cited to the specific place in the record where support for it may be found. Matters already decided will not be rehashed.

> NHA may file a response which may, at NHA's option, take the form of a response and cross-motion on the FLSA overtime claim.

(Order, DE 99. *See also* accompanying Opinion, DE 98 at 33–34 (granting the plaintiff "one more chance to make a coherent submission on the remaining FLSA uncompensated-overtime claim").)

5

entered an order authorizing NHA to file its own motion for summary judgment on the FLSA claim. (DE 109)

NHA then made a combined submission opposing Ms. Goins's reconsideration motion and moving for summary judgment on the remaining FLSA claim. (DE 110, 111)

Only thereafter, on July 3, 2019, did Ms. Foster file Goins's long-overdue motion for summary judgment on the FLSA claim. This filing, too, was not accompanied by a motion for late filing, or even an explanation for the delay. (DE 112) Not wishing to prejudice the client, I accepted the motion for filing. (DE 117)

Ms. Foster fashioned her motion as a cross-motion to NHA's second summary judgment motion, stating "This is a companion filing to plaintiff's opposition papers on defendant's Motion for Summary Judgment." (DE 112-1 at 5) The "opposition papers" to which she referred were apparently those she had filed in connection with her opposition to NHA's first summary judgment motion six months earlier. (DE 89) To be clear, this opposition briefing was exhaustively discussed in my prior summary judgment Opinion. (DE 98) I will not rehash facts and arguments previously dispensed with in that Opinion.

I then received a letter from defense counsel complaining, with justification, that plaintiff's summary judgment motion repeatedly referred to exhibits without stating their location on the docket. (DE 118). Recall that, as a result of prior lapses, I had explicitly ordered that, in plaintiff's subsequent filings, "[e]ach fact will be cited to the specific place in the record where support for it may be found." (DE 99)

Again I made allowances so as to not prejudice Ms. Goins. Perhaps ill-advisedly, I suggested a convenient alternative procedure for counsel who appeared to be having some difficulty:

> ORDER, plaintiff's counsel shall specify the location on the docket of each referenced exhibit and/ or shall refile them, appropriately sponsored by an affidavit.

(DE 119) Predictably, Ms. Foster sought and was granted an extension of time to comply. (DE 121, 122)

Ms. Foster's response to the Court's gesture was grudging to the point of noncompliance. She offered a single sentence, waving in the general direction of the locations where exhibits, collectively, could be found: the exhibits referred to in her brief, she wrote in a letter, "were all included in the plaintiff's opposition papers on the [earlier] motion for summary judgment or are attachments to defendant's motion for summary judgment." (DE 123)[4] This falls far short of a reasonably specific citation to "*each* referenced exhibit" so that adversary counsel, and the court, may readily locate the record support for each of the plaintiff's factual contentions. Indeed, Ms. Foster's failure to specify where these documents are on the docket (and, by the way, her occasional mislabeling of exhibits) has made it a challenge to determine what documents she refers to in her motion.

To recap: NHA filed its second motion for summary judgment. Rather than file an opposition, Ms. Goins filed a cross-motion for summary judgment. NHA then filed an opposition to the Goins cross-motion (DE 124; DE 125; DE 126) Ms. Foster did not otherwise respond to the filings submitted by NHA. The location and status of exhibits on which she relies are insufficiently specified. I have done the best I could with all of this.

On December 11, 2019, I issued an opinion and order (DE 128) on Ms. Goins's motion for reconsideration (DE 100) regarding the CEPA claim. I granted it in part, reinstating Ms. Goins's CEPA claim insofar as it was based on contract-related claims. (DE 128) (The problem, predictably, had been that the CEPA point in counsel's original brief had failed to specify the particular violation of "law" that was the subject of the alleged whistleblowing. The motion for reconsideration, however, pointed to the identification of such a law in an affidavit. I therefore granted reconsideration and restored the claim.)

---

[4]    The letter (DE 123) did cite one exhibit specifically, and it attached a revised copy of a spreadsheet that had been defectively reproduced in earlier papers.

The remaining claims, then, are two:

(1) The FLSA overtime claim

(2) The contract-related CEPA claim (dismissed but restored on reconsideration).

All other claims, including Ms. Goins's overtime-related CEPA claim and FLSA retaliation claim, remain dismissed.

## II.   Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a Court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654,

657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### III.   The FLSA Claim

Ms. Goins's counsel has failed to oppose or respond to the statement of undisputed facts that NHA submitted with its second motion for summary judgment. (DE 110-2)[5] The Court would be entitled to deem all properly

---

[5]      It should also be noted that while NHA does submit a response to the statement of facts filed by Ms. Goins, NHA, too, has at times fallen short of requirements, though not as egregiously. For example, NHA states in unadorned fashion that it "denies" certain allegations in Ms. Goins's statement of facts, without pointing to any evidence in the record on which its denial is based. In some cases, it neither admits nor denies a fact, but state that it is "irrelevant". (*See* DE 126 ¶¶ 1, 12, 14) I am sympathetic to NHA's frustration, as Ms. Goins's SOF includes purported material facts that are indeed irrelevant. (*See, e.g.*, DE 112-2 ("PSOF") ¶¶ 4, 5, 12, 13, 16, 18, 20–23, 27) Therefore, I will only address in this Opinion those well-supported facts relevant to Ms. Goins's purported overtime claim.

supported facts in NHA's SOF as admitted. *See* L. CIV. R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."); *Liberty Bell Bank v. Rogers*, 726 F. App'x 147, 150–51 (3d Cir. 2018) (holding that because the nonmoving defendant borrower neglected to file a responsive statement in opposition to the statement of material facts that was filed by the plaintiff lender in support of its motion for summary judgment, the District Court was entitled to deem the lender's statement of facts as admitted under Local Civil Rule 56.1); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018) (holding as to the equivalent local rule from the Middle District of Pennsylvania that when a nonmovant fails to respond to the movant's statement of material facts, those facts in the movant's statement are deemed to be admitted).

Nevertheless, to the extent Ms. Foster has provided in her briefing or statement of facts an intelligible citation to the factual record indicating that contrary evidence exists, I will, yet again, give Ms. Goins the benefit of the doubt. In subsection A, I will define the overtime hours as to which there is an issue of fact. In subsection B, I apply the law to those hours.

### A. Overtime Claims as Narrowed by the Submissions

#### i. Timekeeping and NHA's overtime policy

Shari Hamilton, the Director of Procurement and Contract at NHA, supervised Ms. Goins. (DE 110-2 ("DSOF") ¶ 4) Ms. Goins's scheduled work hours at NHA were from 8 am to 4:30 pm, with one hour for lunch—a total of 7.5 hours per day, or 37.5 hours per week. (*Id.* ¶¶ 5–6) NHA used a hand punch-in/punch-out system to keep track of the time worked by employees. (*Id.* ¶ 7) Ms. Hamilton reminded Ms. Goins to punch in and out at the correct times based on her preapproved work schedule. (*Id.* ¶ 8)

NHA used overtime slips to record overtime and pay employees for working overtime. (*Id.* ¶ 9) An employee who sought overtime would submit a written request for overtime by filling out a form. (*Id.* ¶ 10) If authorized, the supervisor would sign the form. (*Id.*) The employee was then given a copy of the

approved form and NHA would retain a copy of the form. (*Id.* ¶¶ 11–12) Ms. Goins was aware that this was NHA's policy and submitted five overtime forms.[6] (*Id.* ¶ 17; *see also* DE 123 at 41–57 (copies of overtime permission forms from March 27, 2013, March 28, 2013, April 4, 2013, April 5, 2013, and November 14, 2013)) Ms. Goins also was paid for this time. (*Id.* at 2–40)

Ms. Goins then goes on to state that NHA's "policy is also to pay overtime for hours over the employee's scheduled 37.5 hours (Ex. 1, Tillery dep. p. 23)." (PSOF ¶ 15) NHA disputes this and points to the Local 617 Union agreement which sets a floor of 40 hours: "Employees who work more than forty (40) hours in a seven (7) day work period shall be entitled to overtime pay at the rate of one and one-half times the employees regular rate of pay." (Ex. U, DE 125-5 at 2–3) In any event, Ms. Goins reliance on Ms. Tillery's testimony as supportive of her position is misplaced. Ms. Tillery does not state that she was paid overtime for hours worked in excess of 37.5; she states that she in fact routinely worked 37.5 hours per week, and admits that she was paid overtime for hours worked, not in excess of 37.5, but in excess of 40:

> Q: . . . My question is this: When you would work during the week at -- hours that extend over 35 but less than 40, were you paid overtime for those hours?
> A: No.
> Q: So your overtime pay began at 40 hours?
> A: My overtime pay, you're saying did it begin at 40 hours?
> Q: Right.

---

[6]   For example, in her deposition testimony, Ms. Goins states:

Q: Were you aware that there was a policy that you could not work overtime without your supervisor's approval?

A: Yes.

Q: And your initial testimony was that you didn't know that initially, but at some point you became aware that that was the policy.

A: Yes.

Q: Okay. So – but you could not tell me approximately when that was that you were made aware of that policy?

A: Correct.

(*See* Ex. B, Goins Dep. DE 110-4 p. 98:4–15)

> A: Yeah. I worked -- I worked 37 and a half hours a week. And if I
>    worked overtime and if overtime was approved, I would get paid
>    beyond that over for overtime hours.

(Ex. 1. DE 89–3 p. 23)

### ii. DOL Investigation

The U.S. Department of Labor (the "DOL") investigated the pay practices
of NHA in 2013. (DSOF ¶ 14) Pursuant to that investigation, Ms. Goins was
interviewed. (*Id.* ¶ 15) Ms. Goins provided a written statement to the DOL
investigator. (*Id.* ¶ 16) In her statement, Ms. Goins "advised that she did not
work overtime at NHA." (*Id.*) (citing Ex. M, DE 110-15; Ex. B, Goins Dep., DE
110-4 pp. 387:17-25)

> A copy of the written statement, dated March 28, 2013, reads as follows:
>
> As the coordinator I was basically preparing contracts, edit
> specifications, I do receiving of goods, processing of invoices, and
> performing background checks of vendors.
>
> I work from 8:00 to 4:30 Monday through Friday. I don't work
> overtime. I get lunch for one hour. I do not work through lunch. I
> sometimes get interrupted for questions during lunch. I clock in and
> out for the start and end of the day. I start working after I punch in.
> No one ever changes my time. If I work past my scheduled hours I
> am not paid for that time.
>
> I am paid a salary. If I were to work overtime and its wasn't approved
> I don't get paid for it. My pay is the same each week. I don't really
> work overtime.
>
> I am not aware of anyone that works here under 18.

(Ex. M, DE 110-15 p. 2) Beneath that line is a signature, which appears to read
"Cheryl Goins," attesting that the "above statement is both true and correct."
(*Id.*) Beneath that is the signature of the witness, Travis J. Hall, Wage – Hour
Investigator. (*Id.*) Ms. Goins further testified that she gave the DOL investigator
a copy of a written statement. (Ex. B., DE 110-4 p. 387:20–388:3)

From the DOL statement, it appears that Ms. Goins stated that "*[i]f* I
work past my scheduled hours I am not paid for that time"; that she "did not

work overtime"; that if she worked past "scheduled hours" she would not be paid; and that if she worked overtime without obtaining approval she would not be paid for it. (Ex. M, DE 110-15 p. 2; emphasis added)

To summarize, it does not appear that Ms. Goins joined her coworkers in actually submitting a claim of uncompensated overtime in connection with the DOL investigation and Agreement. Indeed, she seems to have affirmatively stated that she did not possess such a claim. This is unexplained by her.

### iii. Overtime hours from the period of the DOL Agreement (October 9, 2012 through March 24, 2013)

The following concerning the DOL Agreement was undisputed during the parties' first summary judgment briefing:

> Ms. Goins asserts that, as result of the DOL investigation, on March 10, 2014, NHA and the DOL entered into a Back Wages and Compliance Agreement (hereinafter, the "DOL Agreement") in which NHA agreed to pay employees all back wages from the period of March 27, 2011 to March 24, 2013, totaling $1,072,709.53. (Exhibit 11). Because NHA attaches a copy of the DOL Agreement to its reply brief, I will deem this fact undisputed. (*See* Ex. Q, DE 97-2). As discussed *supra*, Ms. Goins asserts that she worked overtime during that period (but also, apparently, at some later time or times).

> In its reply brief, NHA asserts that the DOL provided a list of employees that it contended were entitled to overtime payments. Ms. Goins was not on the list. (DE 97 p. 4) (citing Ex. Q, DE 97-2).

(DE 98 at 11–12).

Ms. Goins asserts that Kevin Medlin, Antoinette Tillery and Nikki Whitney together received overtime payments from the DOL Agreement, but that she did not. (PSOF ¶ 14 (citing "Ex. 8 to Defendants' MSJ"[7]) The DOL Agreement (DE 97–2; DE 89–6 at 3) makes clear that these individuals were paid pursuant to the overtime pay violations uncovered by the DOL investigation.[8]

---

[7]     This reference is incorrect. Ms. Goins's counsel apparently intends to refer to her own Exhibit 8, which is the DOL Agreement. (*See* DE 89–6 at 3)

[8]     As part of the DOL Agreement, a list of those who were awarded back overtime pay is listed and it comprises 365 numbered entries, most of them redacted. Lines 143 through 146 contain surnames beginning with G, but Ms. Goins's name is not among

Ms. Goins asserts that she was unfairly not paid as part of this DOL Agreement. (PSOF ¶ 24) She contends that she was employed for a portion of the period covered by the DOL Agreement: from October 9, 2012 through March 24, 2013. (*Id.*) These facts are not disputed. The difference in treatment between Ms. Goins and her coworkers, however, is easily explained. In connection with the DOL investigation, those coworkers claimed to have worked overtime; Goins did not make such a claim, and in fact affirmatively denied having worked overtime.

Ms. Goins claims that there is an evidentiary dispute as to whether and to what extent she worked unpaid overtime during the DOL Investigation period. Having submitted nothing at the time of the DOL investigation, she now proffers an Excel spreadsheet. That spreadsheet contains entries for almost every day she worked for NHA, with times that she clocked in and out. (DE 112-4; amended copy attached to DE 123 at 2). The spreadsheet, says Goins, compiles information concerning the amount of unpaid overtime she worked. (*Id.*) Ms. Goins suggests in the spreadsheet that these numbers were compiled from weekly time sheets and her own notes. (*Id.*) It does not appear that the spreadsheet itself is an evidentiary document; rather, it was created after the fact by Ms. Goins, for use in this lawsuit.

Examining the spreadsheet—and setting aside the lack of a clear evidentiary foundation—I find it to be an unreliable guide to weekly overtime worked. For example, if Ms. Goins clocked in at 7:55 am (rather than precisely at 8 am), she credits herself with 5 minutes of unpaid overtime. There is no indication that she worked during that 5 minutes; presumably if she had wished to do so, she could have loitered by the time clock and punched in at precisely 8 am. Likewise, if Ms. Goins clocked out at, *e.g.,* 4:33 pm (rather than precisely at 4:30) she credits herself with 3 minutes of unpaid overtime,

---

them. (DE 97-2 p. 12–13). The list suggests that Ms. Whitney, Mr. Medlin, and Ms. Tillery received overtime payments. (*Id.* pp. 18, 24, 25).

without submitting any evidence that she was working during that tiny interim period. This is not the stuff of an FLSA overtime claim.

There is a more fundamental flaw: The arithmetic seems to suggest that Ms. Goins credits herself with overtime daily for all hours in excess of a 7.5 hour workday, *i.e.,* a 37.5 hour work week. This methodology has two problems: (a) Under FLSA, a claim is available only for hours *totaling* in excess of 40 hours *per week;* and (b) even assuming a uniform work week, the threshold would come out to 8 hours, not 7.5 hours, per day. And for some entries the arithmetic is difficult to interpret on any theory.[9]

Even on its face, says NHA, the spreadsheet does not demonstrate much. NHA states that, within the DOL Agreement Period, the spreadsheet shows only seven weeks in which the hours exceeded 40 per week. In those seven weeks, Ms. Goins's claimed overtime is generally measured in fractional amounts—minutes, rather than hours:[10]

| Week | Hours Worked |
|---|---|
| 10/22/12 | 40.19 |
| 11/5/12 | 40.39 |
| 11/26/12 | 40.56 |
| 12/3/12 | 40.18 |

---

[9]   Here are two random examples.

- For 12/31/2012, Ms. Goins started at 7:47 am, took lunch from 1:18–2:05 pm, and left at 3:08 pm—a total of 6 hours and 34 minutes. She credits herself with 21 minutes of overtime.

- For 12/20/2012, she clocked in at 7:55 am, took lunch from 1:19–2:22 pm, and left at 4:58 pm. That comes out to a total of 6 minutes in excess of an 8-hour workday, 5 of which are attributable to clocking in 5 minutes in advance of starting time. Yet the chart credits Ms. Goins with 30 minutes of overtime.

Even assuming that the chart had some evidentiary foundation, it would be virtually useless as a measure of actual time worked in excess of 40 hours per week, and unpaid.

[10]   As discussed below, *see* Section II.b., in order to maintain a claim under the FLSA, a plaintiff must allege, at minimum, that he or she has worked in excess of 40 hours in a given workweek. *See* 29 U.S.C. §§ 206, 207.

|          |       |
|----------|-------|
| 12/17/12 | 40.52 |
| 1/4/13   | 41.45 |
| 3/11/13  | 40.52 |

[TOTAL in excess of 40 = 3.81 hours]

(DE 124 at 11; *see also* DE 125-4 at 2–4)

Ms. Goins submits no response that undermines NHA's calculations or implies that she somehow worked over 40 hours in any other week during the period covered by the DOL Agreement. At this point, I must deem this a failure of proof that Ms. Goins worked any other overtime hours in the period covered by the DOL Agreement.

Notably, Ms. Goins does not submit overtime preapproval forms for any of this time. Nor does she affirmatively state that she submitted preapproval forms for any of this time. Nor does she state that her supervisors were aware that she was working overtime during this period. Instead, she attempts to meet her burden by faulting the defendants for failure to turn over paper overtime sheets, a spoliation claim I deal with later. (PSOF ¶ 34; *see* Section II.B.1, *infra.*)

### iv.  Overtime from the period following the DOL Agreement (March 24, 2013 to June 16, 2014)

I turn to the period March 24, 2013 to June 16, 2014[11] (the "post-DOL Agreement Period"). Ms. Goins's spreadsheet covers this period as well. (DE 112-4, 123 at 2) Ms. Goins submits five approved overtime sheets from this period, but admits that she was paid for these hours. (*Id.*; *see also* DE 123 at 41–57 (copies of overtime forms from March 27, 2013, March 28, 2013, April 4, 2013, April 5, 2013, and November 14, 2013)). Other than those five, Ms. Goins does not claim to have filled out any additional forms seeking approval of overtime. Instead, as before, she simply asserts that NHA has failed to produce the relevant documents. (PSOF ¶ 34; *see* Section II.b.1, *infra.*) She contends

---

[11]     The ending date is June 16, 2014, because on that date Ms. Goins took a leave of absence from NHA and never returned. (DSOF ¶ 20)

that she would work past her scheduled hours, even after clocking out, but was not duly compensated. (PSOF ¶¶ 2, 7, 9)[12] Ms. Goins asserts that Ms. Hamilton required her to work overtime. For example, on one occasion (the date and time is not specified), a coworker, Ellen Fuentes, recalled Ms. Hamilton asking Ms. Goins to help with a contract at 4:30 pm. (*Id.* ¶ 10)

NHA submits time sheets for the period October 2013 through June 16, 2014, the end of her time at NHA. (DE 125-3) (They do not go back as far as March 24, 2013, the beginning of the post-DOL Agreement period.) These timesheets indicate that Ms. Goins never clocked more than 38.5 hours on the job in any week during this period. (*Id.*)

NHA has reviewed Ms. Goins's spreadsheet entries for the post-DOL Agreement period. Even taking them at face value, they show only one week— the week of April 21, 2014—in which Ms. Goins worked in excess of 40 hours. (DE 124 at 11) For that week, the spreadsheet indicates that she worked 42.33 hours. (*Id.*)

Outside of one week in April 2014, then, Ms. Goins's counsel has failed to come forward with any evidence of unpaid overtime (*i.e.,* past 40 hours per week) in the post-DOL Agreement period, March 24, 2013 to June 16, 2014.

*        *        *

Putting together the DOL Agreement period and the post-DOL Agreement period, I find that the potential dispute involves the following eight weeks:

| Week | Hours Worked |
|---|---|
| 10/22/12 | 40.19 |
| 11/5/12 | 40.39 |
| 11/26/12 | 40.56 |

---

[12] That scenario—simply being asked or compelled to work past quitting time— would not have involved overtime forms. Ms. Goins proffers purported additional evidence outside of these paragraphs to support her contention that she worked past her designated schedule. For example, in paragraph 3 she says that a 10/22/13 email documents her working off the clock and she cites "Ex. 10". (PSOF ¶ 2) Exhibit 10 does not match this description.

| | |
|---|---|
| 12/3/12 | 40.18 |
| 12/17/12 | 40.52 |
| 1/4/13 | 41.45 |
| 3/11/13 | 40.52 |
| 4/21/14 | <u>42.33</u> |

**Total hours in excess of 40 = 6.14 hours**

Except as to those eight weeks and 6.14 hours, I find no issue of fact as to overtime worked and compensable under the FLSA.

**B. Spoliation**

I next consider whether the scope of claimed overtime should be expanded to account for alleged spoliation. I conclude that it should not.

"Spoliation is usually referenced in instances where evidence has been altered or destroyed." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (internal citations omitted). However, "under certain circumstances, nonproduction of evidence is rightfully characterized as spoliation." *Id.* Thus "when the contents of a document are relevant to an issue in a case, the trier of fact generally *may* receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir.1995) (internal citations omitted) (emphasis added).

For a Court to find spoliation against a party, four factors must be present: (1) "the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665 F.3d at 73. Once found, spoliation is punishable by sanctions, including the spoliation adverse

inference. *See Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 78–79 (3d Cir. 1994).[13]

      To show that defendants have failed to retain and produce overtime timesheets, Ms. Goins points to three paragraphs in her statement of facts: ¶¶ 17, 33, and 34. (DE 112-2) These do not suffice to establish each element of a spoliation claim.

      I start with paragraph 17:

> 17. Shari Hamilton admitted that paper overtime slips were used. Ex. 5 to SJ, at 47-48. Also Antoinette Tillery testified that she was familiar with such overtime slips. Ex. 1 at 55. She further testified that she had to fill out such forms. Id. at 25. Shari Hamilton testified that Cheryl only gave her two or three overtime slips to sign. Hamilton dep. at 47-48. This is demonstrably false as Cheryl produced many overtime slips in this case. Ex. 34. Paper timesheets called "report of overtime" were business records that NHA was required to keep. Fuentes dep., Ex. 5 at 75.

      These facts establish no more than the following: If an employee wished to be approved for overtime, it was incumbent upon the employee to fill out an

---

[13]    The Third Circuit provides a helpful summary on the rationale of the spoliation inference:

> Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Jamie S. Gorelick, Steven Marzen and Lawrence Solum, *Destruction of Evidence,* § 2.1 (1989). Such evidence permitted an inference, the "spoliation inference," that the destroyed evidence would have been unfavorable to the position of the offending party. As Judge Breyer put it in *Nation-wide Check Corp. v. Forest Hills Distributors, Inc.,* 692 F.2d 214, 218 (1st Cir.1982), "the evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document." As Judge Breyer also noted, the spoliation inference is also seen as having "prophylactic and punitive effects." *Id.* The admissibility of spoliation evidence and the propriety of the spoliation inference is well established in most jurisdictions, including Pennsylvania. *See e.g., Nation-wide Check Corp.,* 692 F.2d 214 (1st Cir.1982); *Mensch v. Bic Corp.,* 1992 WL 236965 (E.D.Pa.1992) (citing Pennsylvania cases); *Gorelick, et al., supra,* § 2.24.

*Schmid,* 13 F.3d at 78. *See also Mosaid Techs. Inc. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (sanctioning a defendant with the spoliation inference).

overtime slip. NHA does not deny that this was the procedure; what is missing is any evidence that Ms. Goins *did* submit any more slips than are now in the record. In a sense, this evidence assumes what it purports to prove. Ms. Goins, if she believes such slips were submitted, could at least attempt to describe them.

Nor does NHA deny that Goins did personally retain and produce in discovery five overtime slips. Ms. Hamilton, from memory, estimated that Goins had submitted two or three; this, according to Goins, is false because she herself had produced "many" such slips (citing the five in her possession). All of those five requests were apparently honored, but in any event they concededly do not document any instance of unpaid overtime. And it does not follow from Ms. Goins's retention of five slips—all were honored—that the Court should infer the existence of further slips that were not.

Ms. Goins then points to Paragraph 33 as supporting prong 4 of the spoliation analysis—*i.e.,* that NHA had a duty to preserve evidence:

> 33. This was after plaintiff complained that she had not received the special overtime payment and asked Sybil why she had not been included in the payment. Ms Bryant never answered her correspondence. ¶15. Ex. 13, letter from Cheryl Goins to Shari Hamilton. Plaintiff certified that "I heard Joe Botte, the payroll manager, complain to his boss Aimee Cheng, that Shari Hamilton approached him to keep me from being paid overtime." Supplemental cert., par. 17. Miss Hamilton testified that she told Joe Botte, the payroll manager that Cheryl should not be paid overtime. Hamilton dep. Ex. 4 at 210.

Paragraph 33 is unhelpful to Goins. It has nothing to do with whether or not NHA suppressed overtime slips or had a duty to retain them.

Finally, Paragraph 34 directs the Court to Exhibit 16. Here, from a prior opinion, is my summary of that cited email:

> [Email] from defendant's counsel, Mr. Gregory Preston to plaintiff's counsel Ms. Elizabeth Foster. (DE 93-1 p. 11 ("Here, there is no dispute that the overtime slips existed or that they were requested by the plaintiff, and NHA's lawyer asserted that the slips could not be found." (citing Ex. 16, DE 89-7 p. 32)). In the e-mail, dated August 5, 2016, Mr. Preston states: "[r]egarding the overtime slips,

my client is undertaking a search for same." (Exhibit 16, DE 89-7 p. 32. *See also* Foster Decl. DE 89-2 ¶ 32 ("Ex. 16 is an email from Greg Preston, Esq. to Liz Foster stating that NHA cannot find the overtime slips that the plaintiff requested.")). Fact discovery closed on April 14, 2017. (DE 65).

(DE 98 at 21) When I drafted that description, Ms. Goins had not asserted any spoliation argument. The spoliation argument appeared only in Goins's belated motion for summary judgment.[14] NHA responded through the declaration of Arthur N. Martin, Jr., its Director of Workplace Compliance. Martin declared that he undertook a search of NHA's records for Goins's overtime forms and was only able to locate one. (DE 110–19)

I may even accept *arguendo* that NHA was in the best position to control the evidence (element 1), and that NHA had a duty to retain these slips (element 4).

I have more trouble with element 2, *i.e.*, that the overtime slips are relevant. As noted above, Ms. Goins's hypothesis—that she has an overtime claim for hours in excess of 7.5 per day—is flawed as a matter of law. Her actual claim to have worked more than 40 hours per week, even on the basis of her own spreadsheet, shrinks to something in the neighborhood of six hours. Her own theory—*i.e.*, that she was informally asked to work extra hours—is not one that would be reflected in overtime sheets. And she does not point to, or describe, any denied request for overtime that a hypothetically existing overtime sheet would tend to prove.

I also do not find that Ms. Goins has presented sufficient support for element 3, that there has been "actual suppression or withholding of evidence." *Bull*, 665 F.3d at 73. Ms. Goins merely argues that because these overtime

---

[14]   Goins did not assert any spoliation argument in response to NHA's motion for summary judgment. She first asserted it in her cross-motion for summary judgment, filed a year after NHA's motion and six months after the deadline for dispositive motions. The court administratively terminated that belated cross-motion, subject to reassertion of grounds remaining after my decision on NHA's motion. *See* Procedural Background, Section I.a at p.2, *supra*. In a subsequent opinion, I granted NHA the opportunity to respond (DE 98 at 22), which it has done.

slips have not been produced, they must have existed, must have been destroyed, and must have supported her claims. Outside of the five slips that she produced, however—which do *not* establish that she is owed overtime, but the opposite—Ms. Goins does not ever forthrightly assert that she actually filled out any other overtime slips or otherwise sought approval for overtime pay.[15]

I therefore find that Ms. Goins has not established that there has been any spoliation of overtime slips.

### C. Legal Analysis of the FLSA Overtime Claims, as Narrowed

To review: I have found that there is an issue of fact as to eight weeks and a total of 6.14 hours of overtime. (Section III.A) I have found that there is no sufficient evidence of spoliation that would justify an inference that there were more such hours. (Section III.B) I now legally analyze Ms. Goins's claims as to those 6.14 hours of overtime.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). Generally, an employer must pay its employees at least a minimum hourly wage for work performed and must pay one and one-half times the employee's regular wage for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206, 207. *See also Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014) (stating that to state a claim for unpaid overtime wages under the FLSA, a plaintiff must establish that she worked "[forty] hours of work in a given workweek as well as some uncompensated time in excess of the [forty] hours." (citing *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013)).

---

[15]    Indeed, it is not clear that plaintiff's theory is that she requested and was denied overtime authorization. Rather, she says, she was told to clock out and required to work off the clock. (PSOF ¶¶ 2–3, 14)

While the FLSA does not define work, Department of Labor regulations settle that:

> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time.

29 C.F.R. § 785.11. *See Clarke v. Flik Int'l Corp.*, No. 17-cv-1915, 2018 WL 3930091, at *2 (D.N.J. Aug. 16, 2018) (Chesler, J.) (citing 29 C.F.R. § 785.11 in an FLSA action).

Section 216(b) of the FLSA grants employees the right to bring an action to recover damages for uncompensated overtime work. However, "an individual employee's right to bring an action pursuant to § 216(b) terminates once that employee is named in a complaint filed by the Secretary of Labor pursuant to § 216(c) or § 217." *Ahmad v. Daniyal Enterprises, LLC,* No. CV 2:14-1142-SDW-SCM, 2015 WL 6872481, at *3 (D.N.J. Nov. 9, 2015).[16]

To recover overtime compensation under the FLSA, "an employee must prove that [s]he worked overtime hours without compensation, and [s]he must show the amount and extent of h[er] overtime work as a matter of just and reasonable inference." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal citations omitted).

---

[16]    While both parties agree that the DOL conducted an investigation and, pursuant to the investigation, NHA entered into the DOL Agreement. Neither party confirms whether a complaint was filed. Under Section 216(b), the filing of a complaint by DOL would bar Ms. Goins's DOL-period claims here. *See* S. Rep. No. 145, 87th Cong., 1st Sess., reprinted in [1961] U.S.Code Cong. & Ad.News 1620, 1658–59 ("[The f]iling of a complaint by the Secretary pursuant to the new authority given him to initiate such injunction suits without formal requests from employees, terminates the right of individuals to later file suit for compensation and liquidated damages under 16(b)."); *Ahmad v. Daniyal Enterprises*, LLC, No. CV 2:14-1142-SDW-SCM, 2015 WL 6872481, at *3 (D.N.J. Nov. 9, 2015)("This bar is absolute . . . This is true whether or not the plaintiff had notice of the suit, consented to it, or was dissatisfied with the result." (internal citations omitted)).

### 1. Overtime for Period of October 9, 2012 to March 24, 2013 (DOL Agreement Period)

I first deal with the period of time between October 9, 2012 (when Ms. Goins was hired) and March 24, 2013 (the last date covered by the DOL Agreement) (the "DOL Agreement Period"). As to that period, as noted above, Ms. Goins's Excel spreadsheet suggests that there are 7 weeks where she worked some amount of time over 40 hours. *See* Section I.b.iii., *supra*. Collectively, this amounts to 3.81 hours of overtime for which she allegedly was not paid.

Ms. Goins suggests that it is unfair that other employees in her department were compensated for unpaid overtime, based on the DOL Agreement, but she was not. (DE 112-1 p. 15) NHA counters that those other employees did, but Ms. Goins did not, seek to be compensated under the DOL Agreement. Indeed, the record is undisputed that Goins affirmatively represented to the DOL that she did not work overtime in this period. Moreover, the DOL conducted an investigation into who was owed overtime pay during this period at NHA. As the DOL Agreement makes clear, the DOL did not find evidence that Ms. Goins was owed overtime and therefore she received nothing from the settlement. These findings along are significant evidence that Ms. Goins's overtime claim for 3.81 hours during the period covered by the DOL Agreement should fail. (DE 110 at 12; DE 124 at 10–12) Ms. Goins does not explain the discrepancy between her position then and her position now.

The DOL Agreement was executed after the Secretary of the Department of Labor conducted an "investigation of [NHA's] business under the FLSA. The investigation covered the [NHA's] operations from 3/27/2011 to 3/24/2013." (DE 89–6 at 3) As part of this investigation, Ms. Goins stated to DOL that she did not work overtime, but that *if* she worked beyond her scheduled hours, then she would not get paid. (DE 110-15) The DOL ultimately concluded that Ms. Goins was not entitled to overtime pay for this period.

Ms. Goins claims throughout her briefing that that NHA knew about and permitted her to work overtime, as summarized in her *post hoc* spreadsheet.

24

(DE 112-1 at 10, amended copy at DE 123-2)[17] She cannot dispute, however, the evidence that she denied the same facts in the course of the DOL investigation, at a time when overtime compensation seems to have been available for the asking.

As I previously observed (*see* DE 98), typing numbers onto an Excel spreadsheet does not convert them into evidence. Even taken at face value, however, these figures establish some 3.81 hours of overtime presence at the job site. *See* Section III.A.iii, *supra*.

As to those limited hours—even assuming they are compensable at all— Ms. Goins must also proffer actual evidence that her employer knew she was working in excess of 40 hours per week and permitted her to do so. *See Clarke*, No. 17-cv-1915, 2018 WL 3930091, at *2 (citing 29 C.F.R. § 785.11 for the proposition that if "the employer knows or has reason to believe that [s]he is continuing to work and the time is working time" that employee is entitled to overtime compensation). The evidence of knowledge is not significant.

Ms. Goins attaches to her statement of facts numerous emails—or oral descriptions of emails—which she says constitute independent evidence of her working "off the clock." (*See* PSOF ¶ 3 (a 10/22/13 email forwarded from Ms. Goins's NHA email address to her personal email address cited as "Ex. 30" (DE 89–9 at 7); an email from October 8, 2013 regarding Ms. Goins punching out but alleging that she continued to work); ¶ 7 (testimony related to a February 2014 email where Ms. Goins stated that Ms. Hamilton would keep her after hours); ¶ 9 (testimony referencing an email related to a May 2014 staff meeting that ran late)). All of these emails or described emails date from long after the October 9, 2012 to March 24, 2013 time period covered by the DOL Agreement. They do not establish NHA's knowledge that the 3.81 overtime hours in question were worked by Ms. Goins.

---

17      This spreadsheet, inadequately cited and defectively reproduced in a prior motion, has been resubmitted as an attachment to a letter. (DE 123) Ms. Goins argues that the court "must accept" the calculation of overtime hours in "the spreadsheet," apparently as part of her spoliation theory.

As noted above, not much remains of the overtime claim for the DOL Agreement Period—overtime for some 3.81 hours in excess of 40 hours per week is at stake. Even as to that limited claim, however, I must grant summary judgment to NHA.

### 2. Overtime for post-DOL Agreement Period (March 24, 2013 to June 2014)

As noted above, the overtime claim is also quite small as to the post-DOL Agreement period (March 24, 2013 to June 2014). There is, however, a triable issue as to whether NHA was aware, or made aware, of this small amount of overtime work.

For this period, Ms. Goins's spreadsheet indicates only one week in which she worked in excess of 40 hours. In the week of April 21, 2014 she worked a total of 42.33 hours, for a total of 2.33 hours of overtime.

There is some additional evidence, but it is no more than suggestive and provides no basis for an overtime calculation. Ms. Hamilton testified that she told employees including Ms. Goins that they were to punch in and out and not work outside of those hours. (*See* Ex. B. pp. 156–57.) Ms. Goins, however, has testified to the contrary. She states that she "worked past her normal hours" and that she communicated this to others at NHA. (Ex. A. Goins Dep. 143:1– 25) This is vague. Recall, moreover, that working "past her normal [37.5] hours" does not necessarily give rise to a FLSA overtime claim; Ms. Goins must demonstrate, in addition to other elements, that she worked more than 40 hours in a week.

The additional evidence to which Ms. Goins points is as follows. Ms. Goins cites an e-mail from herself to Ms. Hamilton, dated October 8, 2013 at 5:02 pm.[18] (DE 89-2 ¶ 8) (citing Ex. 30, DE 89-9 p. 7) (Ms. Goins seems to have saved this email by forwarding it to her own email account.) This email states, "attached are the files and current prevailing wages." Ms. Goins then describes

---

[18]    The spreadsheet contains a note that Goins did not receive timesheets for that week from Ms. Hamilton.

the work required for the files, followed by "Don't worry, I did punch out on time. Just wanted to send you this stuff before going." (DE 89-9 p. 7) This suggests, at most, that Ms. Goins worked 32 minutes past her customary 7.5 hours on one occasion—giving rise to a potential FLSA claim for 2 minutes. Ms. Goins also points to Ms. Hamilton's statement in her deposition that on May 2, 2014, Ms. Goins stayed past her scheduled end time. (PSOF ¶ 9) (citing Ex. 4, Hamilton Dep., DE 89-3 pp. 42–101 (219:1–25 therein))

All of this evidence together suggests a small amount of overtime work on scattered occasions which—assuming the *weekly* total was more than 40 hours, which has not been shown—might add up to a tiny claim. Still, there is an issue of fact barring summary judgment for NHA.

Accordingly, I will deny summary judgment on the FLSA overtime claim for the post-DOL Agreement period, but only insofar as it involves the scattered incidents described above. The motion is otherwise granted.

## IV.   FLSA Retaliation

In plaintiff's cross-motion for summary judgment, she attempts to revive her FLSA retaliation claim. On March 29, 2019, I awarded summary judgment to NHA on that claim. (*See* DE 98, 99) I noted that while Ms. Goins had engaged in protected activity under the FLSA when she acted as a witness in the DOL audit, she had not shown an evidentiary link between the protected activity and any adverse employment action that followed. (*Id.*) On April 4, 2019, Ms. Goins filed a motion for reconsideration of that March 2019 opinion, but *only* insofar as it dismissed Ms. Goins's contract related CEPA claim—not the FLSA retaliation claim. (DE 100)

Now, in her belated summary judgment cross-motion, Ms. Goins offers arguments in favor of granting her already-dismissed FLSA retaliation claim. Most if not all were previously raised and rejected by this Court.[19]

---

19   For instance, Ms. Goins claims that NHA retaliated by declining to pay her expenses for supplementary training, and by somehow causing unflattering statements to appear in articles published *after* she left NHA. (DE 112-1 at 16–17) These were discussed in my prior opinion. (DE 98 at 15, 22–29) She also recasts her

Ms. Goins's FLSA retaliation claim is and remains dismissed.

### V.      Contract-Related CEPA claim

The contract-related CEPA claim, as noted, was reinserted in the case *via* reconsideration and therefore was not included in the briefing of this summary judgment motion. Because the parties did not have the opportunity to brief it in orderly fashion, I will deny summary judgment on this claim for the present. I will permit the parties to supplement their arguments with briefs, not to exceed ten pages, to be submitted within 20 days. Given the exhaustive submissions already made, I will treat those briefs as submissions in support of cross-motions for summary judgment on the contract-related CEPA claim.

### VI.     Conclusion

For the reasons set forth above, NHA's second motion (DE 110) for summary judgment is **GRANTED** in part and **DENIED** in part as follows:

- As to Ms. Goins's FLSA uncompensated overtime claim for the period October 9, 2012 to April 20, 2014, the motion is **GRANTED** and those claims are dismissed.

- As to Ms. Goins's FLSA uncompensated overtime claim for the period March 24, 2013 to June 2014, the motion is **GRANTED in part**, but **DENIED** as to the claim for 2.33 hours from the week of April 21, 2014.

- As to Ms. Goins's contract-related CEPA claim, the motion is **DENIED**, but the parties may, within 20 days, file supplemental briefs, not to exceed ten pages, which will be treated as cross-motions for summary judgment.

---

claim of unpaid overtime as one of retaliation. (DE 98 at 28) The addition of a retaliatory motive adds nothing to the claim that she was owed overtime pay.

Ms. Goins's cross-motion (DE 112) for summary judgment on all issues, including the already-dismissed FLSA retaliation claim, is **DENIED**.

Dated: March 13, 2020

**Kevin McNulty**
**United States District Judge**