# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHERYL GOINS,** | Civ. No. 15-2195 (KM) (JBC) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **NEWARK HOUSING AUTHORITY,** | |
| **Defendant.** | |

## KEVIN MCNULTY, U.S.D.J.:

This Opinion is the latest in a series regarding this matter. I write primarily for the parties and presume familiarity with the facts and procedural history.

This action arises from plaintiff Cheryl Goins's past employment with defendant the Newark Housing Authority ("NHA"). Ms. Goins has alleged that NHA asked her to participate in illegal conduct, engaged in discriminatory and retaliatory behavior against her, and failed to pay her overtime wages. Prior Opinions of the Court have disposed of the majority of the claims raised in Ms. Goins's Complaint.

Now pending before the Court is defendant NHA's third motion (DE 135)[1] for summary judgment. That it is the third such motion is by no means defendant's fault; multiple errors and defaults by plaintiff's counsel, as outlined in a prior opinion, have accounted for the many delays and procedural false starts in this action. (DE 128)

---

[1]     Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

   "DE" = Docket entry number in this case.

   "Compl." = Complaint (DE 4)

NHA now seeks summary judgment on Ms. Goins's contract-related Conscientious Employee Protection Act ("CEPA") claim, which was reinstated after a prior dismissal. For the reasons provided herein, I will deny NHA's motion because Ms. Goins has raised issues of fact. (DE 135).

## I.       Summary

The procedural history was recited in detail in prior Opinions in this matter. I note only the most important details.

On March 27, 2015 Ms. Goins filed a Complaint against NHA, her former employer. (Compl. ¶4). The Complaint contained five counts, two of which were withdrawn. On June 19, 2018, NHA filed its first motion for summary judgment (DE 85) with respect to the remaining three claims: violations of the Fair Labor Standards Act ("FLSA") (Count One); CEPA violations (Count Two); and claims for racial discrimination in violation of the New Jersey Law Against Discrimination and the Civil Rights Act, 42 U.S.C § 1981 (Count Five). On March 29, 2019, I granted defendant's motions with respect to Counts Two and Five. (DE 98 at 33) Therefore, the sole surviving claim was for uncompensated overtime pursuant to the FLSA. (*Id.*).

Ms. Goins then filed a motion (DE 100) for partial reconsideration with respect to the dismissal of her CEPA claim. I dismissed the CEPA claim following defendant's first motion for summary judgment because I found that Ms. Goins had failed to identify the particular law that she believed NHA had violated. (DE 98 at 31) On reconsideration, Ms. Goins submitted that the Court overlooked evidence of particular legal violations. I found that, although Ms. Goins's briefing and statement of facts on summary judgment had failed to cite or specify any such violation, it could be found in an accompanying Declaration. The Declaration did articulate a specific law that Goins believed was violated: "N.J. Local Public Contracts Law and Regulation Reference Manual N.J.S.A. 40A:11-1 et seq." (DE 128 at 13) (citing DE 90 at 6-9, Goins Declaration ("Decl." ¶¶14-26)). In particular, Ms. Goins pinpointed N.J. Stat. Ann. 40A:11-15, "Duration of Contracts." (*Id.*). Because Ms. Goins did cite to a

particular legal violation, I reinstated her contract-related CEPA claim.[2] (DE 128 at 13-14).

On March 13, 2020, I ruled on defendant's pending second motion (DE 110) for summary judgment and Ms. Goins's cross-motion (DE 112) for summary judgmek. (DE 129 at 1-2). For the reasons articulated in the March 13, 2020 Opinion, I substantially granted, but denied in part NHA's motion. (DE 129 at 28). As to Ms. Goins's FLSA uncompensated overtime claim for the period of October 9, 2012 to April 20, 2014, I granted the motion and dismissed those claims. (*Id.*) As to Ms. Goins's FLSA uncompensated overtime claim for the period of March 24, 2013 to June 2014, I granted the motion in part, but denied the motion as to minor claim for 2.33 hours from the week of April 21, 2014. (*Id.*) As to Ms. Goins's contract-related CEPA claim, I denied the motion but allowed the parties to file supplemental briefs, to be treated as cross motions for summary judgment. (*Id.*) Also on March 13, 2020, I denied Ms. Goins's cross-motion for summary judgment on all issues. (*Id.*).

Now before the Court is the defendant NHA's third motion (DE 135) for summary judgment with respect to Ms. Goins's remaining, contract-related CEPA claim.

II.   **Discussion**

a.  **Legal standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a Court must construe all facts and

---

[2] As explained in the December 11, 2019 Opinion (DE 128), the Complaint alleged that Ms. Goins was "asked to perform illegal acts in connection with . . . her complaints about failure to pay her overtime." (Compl. ¶39) Ms. Goins's counsel seemingly abandoned that alternative theory of CEPA liability in her motion for reconsideration. Therefore, the overtime-related CEPA claims remain dismissed; I have reinstated only Ms. Goins's contract-related CEPA claims.

inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am.*, Inc., 974 F.2d 1358, 1363 (3d Cir.1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### b. Plaintiff's Contract-Related CEPA Claim

CEPA was enacted to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Abbamont v. Piscataway Twp. Bd. of Educ*, 138 N.J. 405, 431, 650 A.2d 958, 971 (1994). To effectuate that aim, the statute provides, in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee . . . [d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law.

N.J. Stat. Ann. §34:19-3(a)(l). A retaliatory action is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J. Stat. Ann. §34:19-2(e).

CEPA retaliation claims are analyzed under the usual *McDonnell Douglas* framework. *See Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 662 (N.J. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The employee bears the initial burden of establishing a prima facie case of retaliation. *Id.* Then, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the alleged adverse employment action. *Id.* If the employer articulates such a reason, the burden shifts to the employee to demonstrate that the employer's articulated reason is false and the real reason for the adverse employment action was retaliation. *Id.*

5

To establish a cause of action for retaliation under CEPA, an employee must demonstrate four elements: (1) she had a reasonable belief that her employer's conduct violated a law, regulation, or clear mandate of public policy; (2) she performed a "whistle-blowing" activity under the act; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dzwonar v. McDevitt,* 828 A.2d 893, 900 (N.J. 2003); *Samowski v. Air Brooke Limousine,* Inc., 510 F.3d 398, 404 (3d Cir. 2007).

With respect to Ms. Goins's contract-related CEPA claim, the Complaint alleged that Ms. Goins "was asked to perform illegal acts in connection with the public contracts that she was instructed to prepare." (Compl. ¶39). The Complaint further alleged that Ms. Goins "objected to these illegal instructions and refused to perform any illegal acts," and, "[a]s a result of her objections and refusals, [Ms. Goins's] was retaliated against." (Compl. ¶¶ 40-41). As alleged in the Complaint, some of the illegal activities Ms. Goins was asked to perform included the following:

> (a) process contracts that were too old and needed to be updated.
> (b) handle contracts that had been started by other personnel, were incorrectly prepared, and bring them to completion. For these contracts, other personnel had failed to utilize proper procedures for creating or renewing purchase orders that are needed to correspond with the individual contracts in order to track them.
> (c) process contracts that had not been sent out for a proper bid.
> (d) adjust purchase order timelines illegally.

(Compl. ¶9).

With respect to retaliation, the Complaint alleged:

- Ms. Goins was not permitted to ask certain types of questions that other employees were permitted to ask;

- Ms. Goins was given "contracts that had been improperly handled and issued a performance evaluation to [Ms. Goins] based on these inadequacies that were not [Ms. Goins's] doing but were already present in the contracts when they were assigned";

- Ms. Goins received performance evaluations when no other employees received such performance evaluations;
- Ms. Goins was blamed for the errors of other employees while those employees were "forgiven" for those errors;
- Ms. Goins was placed on a performance improvement plan ("PIP") "without any justified basis";
- Ms. Goins "was forced to a meeting with a NHA lawyer to discuss [her] performance," and that lawyer "admitted to [Ms. Goins] that he saw nothing wrong with her correspondence with a certain vendor and that he did not understand why Shari Hamilton," Ms. Goins's supervisor, "was reprimanding [Ms. Goins]";
- Ms. Goins was "forced to go to this 3 hour meeting at lunchtime without eating lunch and was not given any advance notice of the meeting or choice about the time of the meeting";
- Ms. Goins's "union offered absolutely no assistance to her" and "has since been the target of a police raid."

(Compl. ¶11). The Complaint also alleged that Ms. Goins was required to pay to attend a procurement conference even through Hamilton paid for a male employee to attend. (Compl. ¶13).

On June 12, 2014, Ms. Goins received a PIP. (DE 135-1 at 3; DE 140-1 at 6). The PIP stated that Ms. Goins's job knowledge and skills were "not evident" and that her "work products require extensive review/revision by supervisor." (DE 135-10). Ms. Goins refused to sign the PIP. (*Id.*) On June 16, 2014, Ms. Goins took a leave of absence due to stress and never returned to NHA. (DE 135-1 at 3; DE 140-1 at 6-7). Ms. Goins resigned from NHA in September 2014. (DE 135-1 at 3; DE 140-1 at 7). Nevertheless, on September 29, 2014, NHA terminated Ms. Goins, stating as its reason that Ms. Goins had exhausted her leave under the Family and Medical Leave Act ("FMLA"). (DE 135-1 at 3; DE 135-6; DE 140-1 at 7). She thereafter filed this action against NHA. (DE 135-1 at 4; DE 140-1 at 9).

7

The crux of defendant NHA's current motion for summary judgment on Ms. Goins's contract-related CEPA claims is its contention that Ms. Goins has offered no proof of the allegations listed in the Complaint: *i.e.,* that she engaged in any whistleblowing activity, that she suffered any adverse employment action, or that any alleged retaliatory animus caused Ms. Goins's "separation from employment." (DE 135-19 at 9)

### c. Plaintiff's Prima Facie Case

### i.  Prong One: Reasonable belief that employer's conduct violated a law, regulation, or clear mandate of public policy

I find (and NHA essentially concedes for these purposes (*see* DE 146 at 7-7)), that Ms. Goins has submitted evidence that she reasonably believed the tasks NHA asked her to perform violated the law. In her declaration, Ms. Goins states that she "worked in the field of public contracts for many years" and "was familiar with the local laws for public contracts." (DE 141-1 at 4, Goins Decl. ¶10). Further, Ms. Goins stated that she was asked to process contracts that were in her opinion "too old" and "incorrectly prepared." (*Id.* ¶11). Ms. Goins also states that NHA personnel failed to follow proper procedures for creating purchase orders and procedures for bidding on public contracts. (*Id.*).

### ii.  Prong Two: Whistleblowing activity

I find there is a genuine dispute of material fact regarding whether Ms. Goins engaged in whistleblowing activity. However, I will first dispose of Ms. Goins's argument that reporting illegal activity to coworker Ellen Fuentes constitutes such whistleblowing activity.

Ms. Goins asserts that she told a fellow employee, Ellen Fuentes, that Goins "had been instructed to process contracts that had not been sent out for a proper bid." (DE 140 at 7) Ms. Fuentes corroborates that account. (DE 141-2 at 20, Fuentes Transcript ("Tr.")) However, informing a co-employee that an employer was allegedly violating the law does not constitute whistleblowing activity under CEPA. The Act defines protected activities more narrowly:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose *to a supervisor or to a public body* an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity;

b. Provides information *to, or testifies before, any public body conducting an investigation, hearing or inquiry* into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or

c. *Objects to, or refuses to participate* in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

9

> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. Stat. Ann. § 34:19-3 (emphasis added). The language of the statute does not cover revelations to a coworker. *See id.*

Ms. Goins's evidence of reports to her supervisor, however, stand on a different footing. Goins submits that she informed her supervisor, Ms. Hamilton, of a number of NHA practices that were violative of the law. (DE 140 at 7). In her declaration, Ms. Goins states that, on an unspecified date, she "pointed out" problems with certain contracts to Ms. Hamilton. (DE 141-1 at 3, Goins Decl. ¶12). Ms. Goins also presents an email she sent Ms. Hamilton on April 15, 2014, informing Hamilton of "the rule regarding the advertisement of bids" and stating that she believed the portal sent to prospective bidders would not constitute "an official advertisement." (DE 142-2 at 5, Ex. 23). Goins also presents handwritten contemporaneous notes indicating that she complained to Hamilton about the need for a business registration certificate with respect to NHA's contract with Survey Monkey. (DE 141-4 at 50, Ex. 6). Hamilton, however, testified that Goins never complained to her about illegal conduct related to NHA's contract and procurement process. (DE 135-5 at 24, Ex. C, Hamilton Tr. 206:8-16).

Only the alleged reports to Ms. Hamilton would constitute whistleblowing activity under the statute. As to those, however, there is competing evidence in the record. Thus, there is a genuine dispute of material fact with respect the second element of Ms. Goins's CEPA claim.

### iii.   Prong Three: Adverse Action

NHA maintains that Ms. Goins's CEPA claim must fail because she did not suffer any adverse retaliatory employment action. (DE 146 at 9)

"CEPA defines 'retaliatory action' as the 'discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment.'" *Beasley v. Passaic Cty.*, 873 A.2d 673, 684 (N.J. Super. Ct. App. Div. 2005) (quoting N.J. Stat. Ann. §

10

34:19-2(e)). The phrase "terms and conditions of employment" refers to matters that "are the essence of the employment relationship." *Id.* at 685 (quoting *Township of West Windsor v. Public Employment Relations Commission*, 393 A.2d 255, 261 (N.J. 1978). The phrase is commonly understood to include, *inter alia*,

> length of the workday, *Galloway Township Board of Education v. Galloway Township Association of Educational Secretaries*, 78 N.J. 1, 393 A.2d 207 (1978); increase or decrease of salaries, hours, and fringe benefits, *Piscataway Township Educational Association v. Piscataway Township Board*, 307 N.J.Super. 263, 271, 704 A.2d 981 (App.Div.), *certif. denied*, 156 N.J. 385, 718 A.2d 1214 (1985); physical arrangements and facilities, *Board of Education of City of Englewood v. Englewood Teacher s' Association*, 64 N.J. 1, 7, 311 A.2d 729 (1973); and promotional procedures, *State v. State Supervisory Employees' Association*, 78 N.J. 54, 90–91, 393 A.2d 233 (1978).

*Id.* at 685-86.

"A pattern of conduct by an employer that adversely affects an employee's terms and conditions of employment can qualify as retaliation under CEPA." *Id.* at 686; *see also Green v. Jersey City Bd. of Educ.*, 828 A.2d 883, 891 (N.J. 2008) (noting that retaliation under CEPA "can include . . . many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct."). However, "not every employment action that makes an employee unhappy constitutes 'an actionable adverse action.'" *Nardello v. Twp. of Voorhees*, 873 A.2d 577, 581 (N.J. Super. Ct. App. Div. 2005) (quoting *Cokus v. Bristol Myers Squibb Co.*, 827 A.2d 1173, 1180 (N.J. Super. Ct. Law Div. 2002), *aff'd*, 827 A.2d 1098 (App. Div. 2003)). "[I]n order to be actionable, an allegedly retaliatory act must be 'sufficiently severe or pervasive to have altered plaintiff's conditions of employment in an important and material manner.'" *El-Sioufi v. St. Peter's Univ. Hosp.*, 887 A.2d 1170, 1188 (N.J. Super. Ct. App. Div. 2005) (quoting *Cokus*, 827 A.2d at 1187)). The Supreme Court of New Jersey has explained further: "What constitutes an

11

'adverse employment action' must be viewed in light of the broad remedial purpose of CEPA, and our charge to liberally construe the statute to deter workplace reprisals against an employee speaking out against a company's illicit or unethical activities*." Donelson v. DuPont Chambers Works*, 20 A.3d 384, 392 (N.J. 2011).

In *Donelson,* the Court held, *inter alia,* that an adverse employment action "is taken against an employee engaged in protected activity when an employer targets [her] for reprisals—making false accusations of misconduct, giving negative performance reviews, issuing an unwarranted suspension, and requiring pretextual mental-health evaluations—causing the employee to suffer a mental breakdown and rendering [her] unfit for continued employment." *Id.*

In contrast, in *Cokus,* the Appellate Division affirmed the Law Division "judge's conclusion, *inter alia,* that a negative employment evaluation, unaccompanied by a tangible detriment, such as a salary reduction or job transfer, is insufficient to rise to the level of an adverse employment action." *El-Siouffi,* 887 A.2d at 1188; *see also Cokus,* 827 A.2d at 1099.

> Here, Ms. Goins claims the following adverse employment actions:

> the plaintiff was given burdensome work assignments, cheated out of her overtime pay, denied sick pay, forced to do the work of a less qualified person . . ., given an unprecedented performance evaluation, given an unprecedented [PIP], the same day as she received a verbal disciplinary notice. Her [PIP] criticized her skills as that of a 'novice' even though this accusation had never before been made against her in 20 months of working for NHA. Her work was scrutinized and sabotaged, her every move was watched and she had to account for and defend every decision she made. She had to get her continuing education, which was required to maintain her public purchasing certification, by paying for it herself and taking vacation, but others in the department had their conferences paid for and did not have to take vacation.

(DE 140 at 22-23). As explained, Ms. Goins's overtime- related CEPA claim was, and remains, dismissed. Section 1 n.2, *supra.* However, I find the remaining alleged actions may constitute adverse employment action.

Ms. Goins states that she was given "problem contracts that others had mishandled." (DE 141-1 at 3, Goins Decl. ¶13). Even though the errors were made by others, Ms. Goins was the only employee to receive a performance evaluation and improvement plan. (*Id.*) It is true that an individual PIP that does not change an employee's pay, benefits, or employment status may not constitute an adverse employment action. *See Reynolds v. Dep't of Army*, 439 F. App'x 150, 153 (3d Cir. 2011); *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 447 (3d Cir. 2011) The New Jersey Supreme Court made clear, however, that false accusations of misconduct giving rise to negative performance evaluations may constitute an adverse employment action. *Donelson*, 20 A.3d at 392. If the jury believes Ms. Goins's account that she was intentionally given "problem" contracts—*i.e.*, purposely set up to fail—and then purposefully given a PIP based on those contracts, then the jury may find that such false accusations of misconduct constitute an adverse employment action. *See id.* So these are, or at least could be, viewed as an adverse retaliatory employment action.

Ms. Goins also submits that she was forced to use vacation days to attend a continuing education conference, while other employees were not required to use their vacation days to attend. (DE 141-1 at 3, Goins Decl. ¶13). Ms. Goins further states that she was watched more closely than other employees, her work was scrutinized, and her work was intentionally sabotaged. (*Id.*) Such allegations may be relevant to establishing a pattern of retaliatory conduct, *see Green*, 828 A.2d at 891, but there is no current need to analyze them one by one. As I have already found, Ms. Goins has submitted evidence sufficient to create a genuine issue of fact on the third element.

### iv.   Prong Four: Causal Connection

A causal connection between the whistle-blowing activity and the adverse employment action "can be satisfied by inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action," such as "[t]he temporal proximity of employee conduct protected by CEPA and

13

an adverse employment action." *Maimone v. City of Atlantic. City*, 903 A.2d 1055, 1064 (N.J. 2006). The evidence submitted by Ms. Goins is as follows.

On April 15, 2014, Ms. Goins emailed Ms. Hamilton stating that, in Goins's opinion, a certain bid advisement did not follow proper procedures. (DE 142-2 at 5, Ec. 23). Contemporaneous notes from April 17, 2014 indicate that Goins informed Hamilton that there was a certification issue with NHA's contract with Survey Monkey.  (DE 141-4 at 50, Ex. 6). Two months later, on June 12, 2014, Ms. Goins received the PIP. As explained above, there exist material issues of fact with respect to whether Ms. Goins engaged in whistle-blowing activity and whether NHA engaged in false accusations of misconduct in issuing the PIP to Ms. Goins. If a jury were to find that the email and contemporaneous notes prove that Ms. Goins engaged in whistle-blowing activity, and were to find Ms. Goins's explanation for the PIP credible, then it might find that a causal connection exists between the protected activity and the adverse employment action two months later. *See Maimone*, 903 A.2d at 1064. On this issue, there is therefore a genuine issue of fact.

### d. Legitimate, Nondiscriminatory Reason for the Adverse Employment Action and Evidence that the Real Reason was Retaliation

Once a plaintiff establishes a prime facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the alleged adverse employment action. *Winters*, 50 A.3d at 662. If the employer articulates such a reason, the burden shifts to the employee to demonstrate that the employer's articulated reason is false and that the real reason for the adverse employment action was retaliation. *Id.*

NHA submits that Ms. Goins was given a PIP as a result of her poor performance. (DE 146 at 14) Further, NHA sent Ms. Goins a termination letter, albeit after Ms. Goins resigned, because she had exhausted her leave under the FMLA. (*Id.*). Counsel for Ms. Goins has not directly presented arguments earmarking evidence pertaining to NHA's articulated reason for the PIP. (*See generally* DE 140). However, "[a]s recognized by the New Jersey courts, the

14

prima facie element of causation and the element of causation in the subsequent ultimate proof stage of the case are often factually inseparable and therefore a court may rely on evidence provided in the earlier phase in resolving the latter." *Zaffuto v. Wal-Mart Stores, Inc.*, 130 F. App'x 566, 569 (3d Cir. 2005) (citing *Donofry v. Autotte Sys. Inc.*, 795 A.2d 260, 270 (N.J. Super. Ct. App. Div. 2001)). Therefore,

> a plaintiff's circumstantial evidence of retaliation may include evidence that "'demonstrate[s] such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-[retaliatory] reasons.'"

*Id.* (quoting *Kolb v. Burns*, 727 A.2d 525, 531 (N.J. Super. Ct. App. Div. 1999)).

As explained above, Section II(c)(iii), Ms. Goins has demonstrated that a material dispute of fact exists as to whether the PIP was actually predicated on false accusations, rather than poor performance. In her declaration, Ms. Goins submits that she was purposely assigned contracts with preexisting problems and then penalized for those problems. (DE 141-1 at 3, Goins Decl. ¶13). That is sufficient to create an issue of fact as to whether NHA's articulated reason for the PIP is a mere pretext for retaliation. Because there exists a genuine dispute of material fact as to NHA's motive in disciplining Ms. Goins, summary judgment cannot be granted.

### III.    Conclusion

For the reasons set forth above, I will deny NHA's motion (DE 135) for summary judgment. An appropriate order follows.

Dated: January 12, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**

15